**WILLIAMS & CONNOLLY LLP**
Paul B. Gaffney (SBN 345431)
pgaffney@wc.com
George A. Borden (admitted *pro hac vice*)
gborden@wc.com
680 Maine Avenue SW
Washington, DC 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

**DUANE MORRIS LLP**
Stephen H. Sutro (SBN 172168)
shsutro@duanemorris.com
Robert J. Nolan (SBN 235738)
rjnolan@duanemorris.com
Spear Tower One Market Plaza, Suite 2200
San Francisco, CA 94105
Telephone: (415) 957-3000
Facsimile: (415) 957-3001

Attorneys for Defendants and Counterclaimants
FREEDOM MORTGAGE CORPORATION and
XPANSE, LLC, and Defendants STANLEY C.
MIDDLEMAN, MICHAEL B. MIDDLEMAN,
and GREGORY E. MIDDLEMAN

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| RAHUL MEWAWALLA, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>STANLEY C. MIDDLEMAN, an individual; MICHAEL B. MIDDLEMAN, an individual; GREGORY E. MIDDLEMAN, an individual; FREEDOM MORTGAGE CORPORATION; a New Jersey corporation; XPANSE, LLC, a Delaware limited liability company; and DOES 1-50, inclusive<br>Defendants. | Case No. 3:21-cv-09700-EMC<br><br>**OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT**<br><br>Case Removed: December 16, 2021<br>Trial Date: |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

BACKGROUND .......... 1

ARGUMENT .......... 3

I. PLAINTIFF MUST SATISFY RULE 16 BUT DOES NOT EVEN TRY. .......... 3

A. Rule 16's "Good Cause" Requirement Applies. .......... 3

B. No "Good Cause" Exists. .......... 5

II. THE PROPOSED AMENDMENT IS IMPROPER EVEN UNDER RULE 15. .......... 7

A. Mr. Mewawalla Cannot Even Satisfy The Lighter Rule 15 Burden. .......... 7

1. Undue Delay .......... 8

2. Prejudice and "Bad Faith" .......... 9

3. "Futility" .......... 12

B. "First" Amended Complaints Proposed Late In The Case Receive No Special Treatment. .......... 14

CONCLUSION .......... 14

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Acri v. Int'l Ass'n of Machinists & Aerospace Workers*,
781 F.2d 1393 (9th Cir. 1986) ........ 9, 11, 15

*Becker v. Cmty. Health Sys., Inc.*,
359 P.3d 746 (Wash. 2015) ........ 11

*Bibo v. Fed. Exp. Inc.*,
2010 WL 1688549 (N.D. Cal. Apr. 26, 2010) ........ 14

*BK Ent. Grp. Inc. v. Bendeth*,
2014 WL 1713484 (D.N.J. Apr. 29, 2014) ........ 10

*Bonin v. Calderon*,
59 F.3d 815 (9th Cir. 1995) ........ 8, 9

*Brediger v. Gen. Nutrition Corp.*,
2015 WL 5797095 (W.D. Wash. Oct. 2, 2015) ........ 14

*Burke v. DJO, LLC*,
2012 WL 383948 (D. Minn. Feb. 6, 2012) ........ 8

*Busey v. Richland Sch. Dist.*,
172 F. Supp. 3d 1167 (E.D. Wash. 2016) ........ 14

*C.N.R. Atkin v. Smith,*
137 F.3d 1169 (9th Cir. 1998) ........ 10

*Camarena v. SAMP/USA Inc.*,
129 F. App'x 353, 354 (9th Cir. 2005) ........ 10

*Coachmen Indus., Inc. v. Alternative Serv. Concepts L.L.C.*,
2008 WL 177715 (S.D. Tex. Jan. 17, 2008) ........ 7, 13

*Conte v. Jakks Pac., Inc.*,
981 F. Supp. 2d 895 (E.D. Cal. 2013) ........ 11

*Cramer v. Consol. Freightways, Inc.*,
255 F.3d 683 (9th Cir. 2001) ........ 10

*Design Data Corp. v. Unigate Enter., Inc.*,
2014 WL 4477244 (N.D. Cal. Sept. 11, 2014) ........ 4

*Dreis v. Dearoborn Nat. Life Ins. Co.*,
2015 WL 4508696 (W.D. Wash. July 23, 2015) ............................................................ 14

*Edmonson v. Desmond*,
551 F. App'x 280 (7th Cir. 2014) ............................................................................... 4

*Eminence Cap., LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) .................................................................................... 8

*Everflow Tech. Corp. v. Millenium Elecs., Inc.*,
2008 WL 4793410 (N.D. Cal. Nov. 3, 2008) ............................................................. 15

*Galicia v. Country Coach, Inc.*,
324 F. App'x 687 (9th Cir. 2009) ............................................................................... 11

*Gardner v. Loomis Armored Inc.*,
913 P.2d 377 (Wash. 1996) ........................................................................................ 12

*Guevara v. Marriott Hotel Servs. Inc.*,
2013 WL 6172983 (N.D. Cal. Nov. 25, 2013) ........................................................ 9, 10

*Harris v. Vector Mktg. Corp.*,
2009 WL 3710696 (N.D. Cal. Nov. 4, 2009) ............................................................... 5

*In re Apple iPhone Antitrust Litig.*,
2021 WL 5181862 (N.D. Cal. Nov. 8, 2021) ............................................................... 4

*In re W. States Wholesale Nat. Gas Antitrust Lit.*,
715 F.3d 716 (9th Cir. 2013) ....................................................................................... 3

*IXYS Corp. v. Advanced Power Tech., Inc.*,
2004 WL 135861 (N.D. Cal. Jan. 22, 2004)............................................................... 13

*Jackson v. Bank of Hawaii*,
902 F.2d 1385 (9th Cir. 1990) ................................................................................ 9, 15

*Jardin v. Datallegro, Inc.*,
2011 WL 1897164 (S.D. Cal. May 17, 2011) ............................................................ 15

*Johnson v. Mammoth Recreations, Inc.*,
975 F.2d 604 (9th Cir. 1992) ................................................................................ 3, 6, 8

*Lockheed Martin Corp. v. Network Sols., Inc.*,
194 F.3d 980 (9th Cir. 1999) ....................................................................................... 8

*Lott v. Levitt*,
556 F.3d 564 (7th Cir. 2009) ..................................................................................... 10

*M/V Am. Queen v. San Diego Marine Const. Corp.*,
708 F.2d 1483 (9th Cir. 1983) .......... 15

*Magnuson v. Newman*,
2013 WL 5380387 (S.D.N.Y. Sept. 25, 2013) .......... 7

*McCoy v. Iberdrola Renewables Inc.*,
760 F.3d 674 (7th Cir. 2014) .......... 10

*McDerby v. Daniels*,
2010 WL 2403033 (D. Del. June 16, 2010) .......... 5

*Medimmune, Inc. v. Genentech, Inc.*,
2004 WL 5327194 (C.D. Cal. Feb. 18, 2004) .......... 15

*Medimpact Healthcare Sys., Inc. v. IQVIA Holdings Inc.*,
2022 WL 1571000 (S.D. Cal. May 17, 2022) .......... 7

*Newton v. Am. Debt Servs., Inc.*,
75 F. Supp. 3d 1048 (N.D. Cal. 2014) .......... 10

*Parker v. Columbia Pictures Indus.*,
204 F.3d 326 (2d Cir. 2000) .......... 3

*Phillips v. Greben*,
2006 WL 3069475 (D.N.J. Oct. 27, 2006) .......... 4

*Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., Ltd.*,
2012 WL 2458060 (E.D.N.Y. June 27, 2012) .......... 5, 6

*Price v. Trans Union, LLC*,
737 F. Supp. 2d 276 (E.D. Pa. 2010) .......... 3

*Quan v. S.F. Police Dep't*,
2011 WL 2470477 (N.D. Cal. June 21, 2011) .......... 15

*Rose v. Anderson Hay and Grain Co.*,
358 P.3d 1139 (Wash. 2015) .......... 12, 14

*Roth v. Garcia Marquez*,
942 F.2d 617 (9th Cir. 1991) .......... 13

*Rynn v. First Transit, Inc.*,
2022 WL 17176487 (9th Cir. Nov. 23, 2022) .......... 11

*SAES Getters, S.p.A.v. Aeronex, Inc.*,
219 F. Supp. 2d 1081 (S.D. Cal. 2002) .......... 10

*Schilling v. Radio Holdings, Inc.*,
961 P.2d 371 (Wash. 1998) .......... 14

*Schlachter-Jones v. Gen. Tel. of Cal.*,
936 F.2d 435 (9th Cir. 1991) .......... 10

*Scognamillo v. Credit Swisse First Boston, LLC*,
587 F. Supp. 2d 1149 (N.D. Cal. 2008) .......... 9

*Smith v. Honeywell Int'l, Inc.*,
2014 WL 301031 (D.N.J. Jan 27, 2014) .......... 5

*Snyder v. Alight Solutions, LLC*,
2022 WL 17184979 (C.D. Cal. Sept. 14, 2022) .......... 11

*Staley v. Gilead Scis., Inc.*,
2021 WL 5906049 (N.D. Cal. Dec. 14, 2021) .......... 5

*Trans Video Elecs., Ltd. v. Sony Elecs., Inc.*,
278 F.R.D. 505 (N.D. Cal. 2011) .......... 8

*Utterkar v. Ebix, Inc.*,
2015 WL 5027986 (N.D. Cal. Aug. 25, 2015) .......... 9

*W. Shoshone Nat. Council v. Molini*,
951 F.2d 200 (9th Cir. 1991) .......... 11

*Wasco Prods., Inc. v. Southwall Techs., Inc.*,
435 F.3d 989 (9th Cir. 2006) .......... 10

*Zivkovic v. S. Cal. Edison Co.*,
302 F.3d 1080 (9th Cir. 2002) .......... 3

**STATUTES**

Cal. Labor Code § 210 .......... 3
Wash. Rev. Code § 49.48.010 .......... 2, 13
Wash. Rev. Code § 49.52.050 .......... 2, 13
Wash. Rev. Code § 49.52.070 .......... 3, 13

**RULES**

Fed. R. Civ. P. 15(a)(2) .......... 7
Fed. R. Civ. P. 16(b)(4) .......... 3, 5

## INTRODUCTION

Mr. Mewawalla seeks leave to replace the California Labor Code claims the Court dismissed on summary judgment, because none of the relevant conduct took place in California, with claims under Washington law. Mr. Mewawalla was fully aware of this deficiency when he brought the case more than two years ago and yet waited to seek amendment until (1) *after* discovery closed; (2) *after* the date by which he said he would amend his pleadings; (3) *after* the dispositive motion cutoff date passed; (4) *after* the parties' summary judgment motions had been filed, argued, and taken under submission; and (5) *after* the Court ruled on those motions.

The Court should deny the Motion. First, the Motion does not even mention Fed. R. Civ. P. 16, much less attempt to satisfy its requirement of "good cause" for adding new claims so late in the case. Second, even were the Court to apply the less stringent Rule 15 standard, as Mr. Mewawalla requests, it should still deny leave in light of Plaintiff's long delay in seeking amendment correcting defects readily apparent since the Complaint was filed; the prejudice inflicted from the significant additional proceedings required should leave be granted; and the futility of the proposed amendment. Mr. Mewawalla unsurprisingly cites no decision granting leave to amend in circumstances even remotely resembling these, and the Court should reject his blatant attempt to circumvent the summary judgment rulings it has already issued.

## BACKGROUND

This lawsuit over Mr. Mewawalla's employment by and termination from Freedom Mortgage Corporation has been pending since September 3, 2021. ECF 1 at ¶ 1. His Complaint named six corporate and four individual defendants and included a grab bag of claims under the California Labor Code (Counts 7, 8, 9, 13, 14, 15). *Id*. Shortly after ruling on Defendants' Rule 12 motion in May 2022, the Court issued a Case Management Order that set discovery cut-off and dispositive motion briefing dates but omitted a deadline to amend pleadings.[1] ECF 32. Nonetheless, Plaintiff's counsel addressed that question in the parties' Joint Case Management Conference Statement,

[1] This apparently was an oversight. Setting a deadline to "amend the pleadings" is one of the "required contents" of a Rule 16 Scheduling Order. Rule 16(b)(3)(A).

representing that he intended to amend shortly after the "completion of initial discovery,"[2] and that he expected to do so "no later than September 30, 2022." ECF 25 at 9–10.

The Court subsequently granted several joint requests to extend various deadlines for fact and expert discovery, dispositive motion briefing, and pre-trial filings. ECF 83, 88, 102–03, 107, 109, 113–14, 139–40. In none of those requests did Plaintiff's counsel revise his previous "no later than" representation about amendment or otherwise give the Court or Defendants any reason to expect that Plaintiff might seek to amend after discovery closed and summary judgment motions were briefed and decided. *See id.*

Pursuant to the Scheduling Order, on July 17, 2023, Defendants moved for partial summary judgment challenging, among other things, Mr. Mewawalla's attempt to apply the California Labor Code to conduct occurring either in Washington, where he resided at the relevant times, or the various locations outside of California where Defendants were located. ECF 132-11 at 17–19; ECF 144-4 at 10–11. Defendants also challenged these claims on their merits, in particular, explaining how none of the alleged conduct underpinning his retaliation and wrongful termination claims was actually illegal, and demonstrating that the contemporaneous evidence showed beyond any genuine dispute that his termination was not pretextual. ECF 132-11 at 19–23; ECF 144-4 at 11–15. The Court held oral argument on Defendants' motion, and Plaintiff's cross-motion for partial summary judgment, on August 31, 2023.

The Court's September 20, 2023 summary judgment order dismissed all but one of the Labor Code claims on extraterritoriality grounds and did not resolve Defendants' additional arguments challenging those claims as substantively deficient. ECF 160 at 21–29.[3]

Mr. Mewawalla waited more than a month after the Court's ruling to file this Motion. He seeks a do-over on his statutory employment claims by replacing them with three new causes of action under Washington law: (1) Wrongful Discharge in Violation of Washington Public Policy; (2) Wrongful Withholding of Wages, Including Upon Termination, Revised Code of Washington

---

[2] The parties exchanged initial disclosures on June 7, 2022.

[3] Count 14 was the exception. The Court *did* reach the merits of, and dismissed, Mr. Mewawalla's claim that he was wrongfully induced to leave California for Washington.

("RCW") 49.48.010; and (3) Intentional Wrongful Withholding of Wages, RCW 49.52.050. *See* ECF 163-1, Counts 5–7. He also proposes to add a lengthy paragraph of new factual allegations that are keyed to aspects of Washington law that differ from California law. *Id.* ¶ 210. And he proposes to revise his prayer for relief to double the amount of his multi-million-dollar severance-benefit claim under RCW 49.52.070, an expanded remedy that its California analogue, Labor Code § 210, does not provide. In short, this is a classic attempt to work an end-run around summary judgment.

## ARGUMENT

## I. PLAINTIFF MUST SATISFY RULE 16 BUT DOES NOT EVEN TRY.

### A. Rule 16's "Good Cause" Requirement Applies.

Rule 16 requires "good cause" to modify a scheduling order deadline. Fed. R. Civ. P. 16(b)(4); *see Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002). "Good cause" means "scheduling deadlines cannot be met despite [a] party's diligence." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (citation omitted). No "good cause" exists if a party "has been aware of the facts and theories supporting amendment since the inception of the action." *In re W. States Wholesale Nat. Gas Antitrust Lit.*, 715 F.3d 716, 737 (9th Cir. 2013). Waiting to amend notwithstanding the knowledge of such facts and theories is "presumptively not diligent" for purposes of Rule 16(b). *Price v. Trans Union, LLC*, 737 F. Supp. 2d 276, 280 (E.D. Pa. 2010) (citing *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 341 (2d Cir. 2000)).

Plaintiff's Motion avoids mentioning Rule 16 and instead contends that Rule 15 governs. This is incorrect for two key reasons.

1. Courts in this Circuit and elsewhere routinely apply Rule 16's "good cause" standard even where there is no formal deadline for amendment when, as here, the movant has waited until the late stages of the proceedings to seek leave. *See, e.g.*, *Design Data Corp. v. Unigate Enter., Inc.*, 2014 WL 4477244, at *2 (N.D. Cal. Sept. 11, 2014) (applying Rule 16 notwithstanding absence of deadline for amending pleadings because not doing so would "elevat[e] form over substance given the status of the case when the motion was filed"), *aff'd*, 847 F.3d 1169 (9th Cir. 2017); *In re Apple iPhone Antitrust Litig.*, 2021 WL 5181862, at *3–4 (N.D. Cal. Nov. 8, 2021) (applying Rule 16 even

though court did not set deadline to amend "[g]iven the lengthy procedural history of the case," including hearing on pending substantive motions); *Edmonson v. Desmond*, 551 F. App'x 280, 282 (7th Cir. 2014) (affirming district court's application of Rule 16's good cause standard where district court set deadlines for discovery and dispositive motions—but not for motions to amend—and denied motion for leave to amend filed a month after discovery closed); *Phillips v. Greben*, 2006 WL 3069475, at *6–7 (D.N.J. Oct. 27, 2006) (applying Rule 16 even though court did not "set date to amend the pleadings" because "it was certainly clear that any possibility to amend the pleadings would expire when discovery closed"). "Where a scheduling order sets no amendment deadline, courts have looked to when discovery closes to determine whether the motion to amend is untimely under Rule 16. Rule 16(b) applies to a motion to amend even when there is no scheduling order deadline, if 'any possibility to amend the pleadings would expire when discovery closed.'" *Smith v. Honeywell Int'l, Inc.,* 2014 WL 301031, at *5 (D.N.J. Jan 27, 2014) (citations omitted).

That approach is especially appropriate here given Plaintiff's counsel's representation that he would "be able to amend the complaint no later than September 30, 2022." ECF 25 at 9–10. Where the record "contains some indication" that the court and parties "understood the pleading would not be further amended," it is appropriate to evaluate motions to amend under Rule 16 even in the absence of a formal deadline in the case management order. *Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., Ltd.*, 2012 WL 2458060, at *5 (E.D.N.Y. June 27, 2012) (collecting cases applying Rule 16 where representations by counsel or prior rulings precluded amendment). In *McDerby v. Daniels*, 2010 WL 2403033 (D. Del. June 16, 2010), for example, where amendment was sought after discovery closed and dispositive motions were due, the court applied the "good cause" standard despite the absence of an amendment deadline because the plaintiff had previously represented at a scheduling conference "that there was no need to amend the pleadings." *Id.* at *6.

Here, moreover, after Plaintiff's self-imposed amendment deadline passed, the parties filed five joint requests asking the Court to adjust and extend various dates, including for fact and expert discovery, ECF 83, 102, 107, 113, 139, and not once did Mr. Mewawalla inform the Court of any possible amendment or propose any new deadline for amending. This failure is particularly

egregious with respect to the "Joint Stipulation to Extend Expert Discovery and Pretrial Deadlines" filed on August 7, 2023, ECF 139, *after* Defendants had filed their summary judgment motion detailing their extraterritoriality arguments.[4]

2. Rule 16's "good cause" standard applies even absent an amendment deadline in the Scheduling Order because the Motion, if granted, would require a modification of the existing schedule to accommodate further proceedings. Rule 16 specifies that *any* modification of the schedule requires the movant to show "good cause." *See* Fed. R. Civ. P. 16(b)(4). Here, at the very least, the Court would need to set another summary judgment briefing schedule so Defendants could challenge these new claims with versions of the arguments lodged against the California Labor Code claims that the Court understandably never reached given its ruling on extraterritoriality. This motion, moreover, would do more than rehash what Defendants previously filed, with replacement citations to the Washington Reporter, because as explained *infra*, Washington employment law has idiosyncrasies that render the proposed new claims vulnerable on summary judgment to additional arguments Defendants haven't previously made.

For these same reasons, and contrary to what Plaintiff insists, given the different elements and remedies available under the proposed Washington claims, additional discovery under a modified schedule would be necessary to explore whether all elements of the new claims are satisfied. *See* Section II.A.2, *infra*. This, too, would necessitate revising the Scheduling Order and thus trigger Rule 16. Ensuring finality and preventing the need to litigate new claims at the eleventh hour after discovery has closed and dispositive motions have been decided is exactly why these standards apply.

**B. <u>No "Good Cause" Exists.</u>**

Plaintiff understandably wants to ignore Rule 16 because he has no prospect for satisfying its "good cause" standard. To begin with, he was not diligent. He has obviously known since before

[4] These circumstances distinguish this Court's decisions in *Staley v. Gilead Scis., Inc.*, 2021 WL 5906049, at *1 (N.D. Cal. Dec. 14, 2021), and *Harris v. Vector Mktg. Corp.*, 2009 WL 3710696, at *1 (N.D. Cal. Nov. 4, 2009), which applied Rule 15 to motions to amend where the scheduling orders did not impose a deadline for amended pleadings. Unlike in those cases, here the record establishes that all parties understood there would be no further amendments. *Cf. Point 4 Data Corp.*, 2012 WL 2458060, at *5.

this case began where he lived at each relevant time, so this is not a matter of undiscovered fact. In addition, he waited until the Court entered judgment against him to request leave to assert his new claims. Courts are nearly uniform in disallowing amendment in these circumstances. *See, e.g.*, *Johnson*, 975 F.2d at 610 (finding "good cause" absent when plaintiff sought amendment after close of discovery); *Coachmen Indus., Inc. v. Alt. Serv. Concepts L.L.C.*, 2008 WL 177715, at *1–3 (S.D. Tex. Jan. 17, 2008) (finding failure to "demonstrate good cause" for amending complaint and scheduling order after the defendants had already filed "four motions for summary judgment").

More importantly, nowhere does Mr. Mewawalla provide a satisfactory explanation for his failure to fully develop his theories of liability in the operative Complaint. Instead, he blames Defendants for raising extraterritoriality in summary judgment rather than earlier in the case. Mot. at 9. This is no excuse. As the Court observed at summary judgment, a challenge to the extraterritoriality of a state statute is not an affirmative defense but is "part of a *plaintiff's* burden of proof." ECF 160 at 21 n.4 (emphasis added) (quoting *Medimpact Healthcare Sys., Inc. v. IQVIA Holdings Inc.*, 2022 WL 1571000, at *6 (S.D. Cal. May 17, 2022)). It was Mr. Mewawalla's obligation to timely assert the claims he intended to bring, and he could have done so long ago—and certainly by September 30, 2022—as he represented to both opposing counsel and the Court. Mr. Mewawalla in any event had notice of this defect and the motion to come when certain Defendants in their Rule 12 challenge to personal jurisdiction nearly two years ago pointed out that "the alleged breaches and tortious conduct either occurred in New Jersey and New York (the alleged misrepresentations), or occurred *after* Plaintiff moved to Washington in June 2020." ECF 12-1 at 19 (emphasis in original). Defendants should not be penalized for Mr. Mewawalla's failure to timely assert claims he knew existed long ago.

Diligence at the very least required Mr. Mewawalla to seek leave months ago when Defendants detailed their extraterritoriality challenge. Had he done so, and had the Court permitted amendment, there would be no need now for a second round of summary judgment briefing on the merits of the new Washington claims. Courts in similar circumstances have refused belated requests of this sort. *See, e.g.*, *Magnuson v. Newman*, 2013 WL 5380387, at *5 (S.D.N.Y. Sept. 25, 2013)

(party failed to meet "good cause" standard to bring claims under "analogous provisions of another jurisdiction" because it should have known extraterritoriality issue earlier); *Coachmen Indus., Inc.*, 2008 WL 177715, at *1–2 (rejecting request to add claims party characterized as "equivalent" to existing state law claims because choice-of-law concerns were not "a newly discovered issue"); *Burke v. DJO, LLC*, 2012 WL 383948, at *6–7 (D. Minn. Feb. 6, 2012) (rejecting assertion of "good cause" to include a claim under another state's law where "'choice-of-law' considerations were . . . immediately apparent at the outset of the litigation").

Finally, although diligence by the movant is the primary consideration under Rule 16, the "existence or degree of prejudice" to the nonmoving party "might supply additional reasons to deny the motion." *Johnson*, 975 F.2d at 609. As described below, permitting the proposed amendment now would result in substantial prejudice to Defendants.

For all these reasons, there is no good cause to permit the proposed amendment.

## II. THE PROPOSED AMENDMENT IS IMPROPER EVEN UNDER RULE 15.

Mr. Mewawalla would prefer his Motion be judged under Rule 15's directive that leave to amend "should [be] freely give[n] . . . when justice so requires," Fed. R. Civ. P. 15(a)(2). But even under this more lenient standard, the Court should deny the Motion. Mr. Mewawalla's amendment is simply an attempt to circumvent summary judgment by alleging new claims based on his Washington residence after his California Labor Code claims were summarily adjudicated in favor of Defendants.

### A. Mr. Mewawalla Cannot Even Satisfy The Lighter Rule 15 Burden.

A party's right to amend under Rule 15 depends on four factors: "(1) bad faith on the part of the plaintiffs; (2) undue delay; (3) prejudice to the opposing party; and (4) futility of the proposed amendment." *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999). Either prejudice or a "strong showing" of the other factors independently justifies denying leave to amend. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003); *see also Trans Video Elecs., Ltd. v. Sony Elecs., Inc.*, 278 F.R.D. 505, 509–10 (N.D. Cal. 2011) (Chen, J.), *aff'd*, 475 F. App'x 334 (Fed. Cir. 2012). Likewise, "[f]utility of amendment can, by itself, justify the

denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

None of these factors weighs in favor of granting the Motion. Indeed, Mr. Mewawalla does not cite a single case applying Rule 15 that granted leave to amend in remotely analogous circumstances.

**1. Undue Delay**

Mr. Mewawalla contends that he "timely moved to amend" by filing the Motion "within weeks of the court's summary judgment order dismissing the claims [he] seeks to replace." ECF 163 at 8. That is not how courts measure "undue delay." What matters is how long it took the plaintiff to seek leave "after it should have become aware of the information that underlies that motion." *Scognamillo v. Credit Suisse First Boston, LLC*, 587 F. Supp. 2d 1149, 1157 (N.D. Cal. 2008); *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990). Late amendment is "not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986); *see also Jackson*, 902 F.2d at 1388.

Mr. Mewawalla knew, before he filed suit, all of the facts on which he bases his proposed new claims. He most certainly knew he resided in Washington at the relevant time. The only "new" information coming to light since then is the Court's unsurprising conclusion that a plaintiff who lives in Washington cannot assert California Labor Code claims against a collection of East Coast Defendants where none of the supposedly wrongful conduct occurred in California. *E.g., Utterkar v. Ebix, Inc.*, 2015 WL 5027986, at *7 (N.D. Cal. Aug. 25, 2015) (amendment denied under Rule 15 where no newly discovered facts or change in law). Rudimentary pre-complaint research would have revealed this. *See id.* at *7 (finding undue delay where "Plaintiff offer[ed] no explanation other than 'inadvertence or mistake'" for its failure to seek amendment earlier). Nor has Mr. Mewawalla provided a "satisfactory explanation for his failure to fully develop his contentions" in his operative Complaint. *Guevara v. Marriott Hotel Servs. Inc.*, 2013 WL 6172983, at *5 (N.D. Cal. Nov. 25, 2013) (quoting *Bonin*, 59 F.3d at 845). All he can muster is an accusation that Defendants should have alerted him to the Complaint's extraterritoriality problem sooner—a proposition the Court has

already rejected. ECF 160 at 21 n.4 (rejecting Plaintiff's waiver argument).

As with Rule 16, courts evaluating motions for leave under Rule 15 also routinely reject belated attempts to bring new theories of liability, including efforts to change the applicable law. In *McCoy v. Iberdrola Renewables Inc.*, 760 F.3d 674 (7th Cir. 2014), for example, the court affirmed the denial of leave to amend where that plaintiff proposed replacement claims "only as this litigation approached the two-year mark and after it had lost on the merits under Illinois law." *Id.* at 684; *BK Ent. Grp. Inc. v. Bendeth*, 2014 WL 1713484, at *3, 6–7 (D.N.J. Apr. 29, 2014) (denying leave under Rule 15 where discovery "indicat[ed] that choice of law concerns could be an issue," yet the movant did not seek leave until after "the adjudication of summary judgment").[5] That conclusion applies equally here.

**2. Prejudice and "Bad Faith"**

"A motion for leave to amend is not a vehicle to circumvent summary judgment," *Schlachter-Jones v. Gen. Tel. of Cal.*, 936 F.2d 435, 443 (9th Cir. 1991), *abrogated on other grounds in Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683 (9th Cir. 2001), nor is it properly used as "a procedural second chance to flesh out inadequate pleadings." *Newton v. Am. Debt Servs., Inc.*, 75 F. Supp. 3d 1048, 1063 (N.D. Cal. 2014) (quoting *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006)). "Bad faith may be shown when a party seeks to amend late in the litigation process with claims which were, or should have been, apparent early." *Guevara*, 2013 WL 6172983, at *5 (plaintiff waited "until the proverbial writing was on the wall to express his desire to amend his pleading").[6]

Prejudice is the other side of the same coin. If the newly proposed claims are not futile (they are, *see* Section II.A.3, *infra*), allowing amendment this late would require reopening discovery to

[5] Additionally, choice-of-law issues may be waived. *Camarena v. SAMP/USA Inc.*, 129 F. App'x 353, 354 (9th Cir. 2005) (citing *C.N.R. Atkin v. Smith*, 137 F.3d 1169, 1171 (9th Cir. 1998)). Where, as here, a plaintiff submits to and relies "solely on" one state's law at the motion to dismiss stage, it cannot later assert an "argument for different substantive law." *McCoy*, 760 F.3d at 684 (citing *Lott v. Levitt*, 556 F.3d 564, 567–68 (7th Cir. 2009)).

[6] *SAES Getters, S.p.A.v. Aeronex, Inc.*, 219 F. Supp. 2d 1081 (S.D. Cal. 2002)—a case Mr. Mewawalla cites—fails to move the needle. ECF 163 at 9–10. Bad faith may be shown in a number of ways, *see, e.g.*, *Guevara*, 2013 WL 6172983, at *5–6, not just using tactics that destroy diversity jurisdiction.

permit Defendants to develop facts peculiar to the new Washington claims, followed by new dates for a second round of summary judgment briefing. Citing "prejudice" of this sort, the Ninth Circuit regularly affirms decisions denying requests to amend where, as here, plaintiffs sought leave after discovery had closed and the parties had briefed summary judgment motions. *See, e.g.*, *Acri*, 781 F.2d at 1398–99 (affirming denial of proposed amendment brought to avoid "an adverse summary judgment ruling" and that would require "further discovery"); *W. Shoshone Nat. Council v. Molini*, 951 F.2d 200, 204 (9th Cir. 1991) (same); *Galicia v. Country Coach, Inc.*, 324 F. App'x 687, 689 (9th Cir. 2009) (affirming denial of leave to plead new claims requiring additional discovery "after summary judgment was granted in [the defendant's] favor"); *Rynn v. First Transit, Inc.*, 2022 WL 17176487, at *1 (9th Cir. Nov. 23, 2022) (unpublished) (recognizing prejudice where plaintiff sought to amend "after the close of discovery and after summary judgment briefing was complete"); *see also Conte v. Jakks Pac., Inc.*, 981 F. Supp. 2d 895, 908 (E.D. Cal. 2013) (denying leave where amendment would, among other things, prejudice the defendant, "cause undue delay," and be "contrary to judicial economy"), *aff'd*, 563 F. App'x 777 (Fed. Cir. 2014).

Mr. Mewawalla insists that additional discovery is unnecessary and that "there will be no resultant delay to the case schedule." ECF 163 at 7-8. That is plainly incorrect. On the scheduling question, for the reasons discussed above there would need to be another round of summary judgment briefing so Defendants could assert Washington law analogues to arguments they made in their prior motion but that the Court had no need to reach: *e.g.*, there was nothing unlawful about (i) Xpanse's conversion to an LLC, (ii) its 2020 Section 409A valuation, or (iii) Gregory Middleman's meetings with a mortgage-software company in December 2020 and January 2021; and no reasonable jury could find Mr. Mewawalla's firing was pretextual.

There would also be additional arguments based on the nuances in which Washington employment law differs from California labor law. For example, while Washington (like California) recognizes "four categories of public policies" that may provide a basis for a wrongful termination claim, *see Becker v. Cmty. Health Sys., Inc.*, 359 P.3d 746, 749 (Wash. 2015); *Snyder v. Alight Solutions, LLC*, 2022 WL 17184979, at *3 (C.D. Cal. Sept. 14, 2022), Washington (*unlike*

California) may apply a "more refined analysis" (i.e., the "four-factor *Perritt* analysis") when a "case does not fit neatly within one of these scenarios," *Becker*, 359 P.3d at 749. Under the *Perritt* framework, courts examine (1) "the existence of a clear public policy (the *clarity* element)"; (2) whether "discouraging the conduct in which they engaged would jeopardize the public policy (the *jeopardy* element)"; (3) whether "public-policy-linked conduct caused the dismissal (the *causation* element)"; and (4) whether the employer is "able to offer an overriding justification for the dismissal (the *absence of justification* element)." *Gardner v. Loomis Armored Inc.*, 913 P.2d 377, 382 (Wash. 1996). Defendants would likely need to brief this additional issue in another round of summary judgment.

Defendants also would be entitled to some additional discovery before filing this motion or, if necessary, defending this claim at trial. The proposed First Amended Complaint includes a lengthy new paragraph asserting factual allegations directed to the "jeopardy" element that Washington law requires but California law does not:

> Plaintiff and CFO Timothy Beard were the only individuals outside of the Middlemans and the Middlemans' inner circle, who knew about the Middlemans' scheme to restructure and reorganize the company from a C-Corp to a LLC and about the Middlemans' secret valuation scheme. Therefore, Plaintiff and CFO Beard were the only individuals in a position to challenge the Middlemans' illegal scheme and did so in the only path that was available to them to protect Plaintiff's and his co-workers' legal rights to the compensation and equity promised to them as part of their employment.

ECF 163-1 at ¶ 210.

To satisfy the "jeopardy" element, Mr. Mewawalla must show that he "engaged in particular conduct and [that] the conduct directly relates to the public policy or was necessary for the effective enforcement of the public policy. This burden requires [Mr. Mewawalla] to 'argue that other means for promoting the policy . . . are inadequate. In other words, [he] *must argue that the actions he . . . took were the only adequate means to promote the public policy*." *Rose v. Anderson Hay and Grain Co.*, 358 P.3d 1139, 1143 (Wash. 2015) (emphasis added). Among other things, Defendants must question Mr. Mewawalla and possibly other witnesses on a number of issues, including who in his opinion is in the "inner circle" he references and why he believes that; whether other employees

were aware of the conduct he characterizes as unlawful; and why he believes the actions he and Mr. Beard took—complaining "in writing and in meetings"—were "the only adequate means to the promote public policy." In addition, Defendants have not had the opportunity to propound written discovery on these claims. And Defendants need the opportunity to evaluate, based on this testimony and the differences in the law, whether additional opinion evidence is necessary to defend these new claims besides what California law required. "[T]he need for a party to conduct supplemental discovery or to consider a new line of legal argument are classic sources of prejudice that have regularly proven sufficient to defeat a motion for leave to amend." *IXYS Corp. v. Advanced Power Tech., Inc.*, 2004 WL 135861, at *3 (N.D. Cal. Jan. 22, 2004); *see also Coachmen*, 2008 WL 177715, at *3 (denying leave because "additional research and discovery would very likely be necessary" even "if the new claims sought to be plead[ed] by [plaintiff] are similar to the current claims").

**3. "Futility"**

"[C]ourts have discretion to deny leave to amend a complaint for 'futility,' and futility includes the inevitability of a claim's defeat on summary judgment." *Roth v. Garcia Marquez*, 942 F.2d 617, 628 (9th Cir. 1991). Here, Mr. Mewawalla's proposed new claims under Washington law are vulnerable to pre-trial dismissal for many of the same reasons Defendants spelled out in their summary judgment briefs, arguments the Court understandably did not reach after finding the California Labor Code had no extraterritorial reach.

In particular, proposed new Count 5, for "Wrongful Discharge in Violation of Washington Public Policy," is subject to summary judgment for many of the same grounds stated against Counts 7, 8, and 9 of the original Complaint. ECF 132-11 at 19–23; ECF 144-4 at 11–15. *First*, none of the conduct Mr. Mewawalla complains about was wrongful, let alone illegal. For example, Xpanse's conversion to an LLC was entirely appropriate under the relevant corporate law; there was nothing wrong or misleading about Xpanse's 2020 409A valuation; and Mr. Mewawalla adduced no evidence that Gregory Middleman engaged in some subterfuge in a meeting with an unnamed third-party software company. *See id.* *Second*, there is no evidence that Mr. Mewawalla's termination

had anything to do with these allegations. To the contrary, the undisputed evidence shows beyond any genuine dispute that Mr. Mewawalla was incompetent and failed at his job. *See id.* His requested amendment should be denied on this ground alone.

As explained above, an additional wrinkle recognized by Washington, but not California law, on this sort of wrongful discharge claim makes it separately vulnerable as well to "a motion to dismiss or motion for summary judgment." *Bibo v. Fed. Exp. Inc.*, 2010 WL 1688549, at *2 (N.D. Cal. Apr. 26, 2010). Under Washington law, Mr. Mewawalla may have to show that his objection to Defendants' business plans "was necessary for the effective enforcement of the public policy." *Rose*, 358 P.3d at 1143. Put differently, he may have to prove that the actions he "took were the only adequate means to promote the public policy." *Id.* But his proposed amended complaint does not allege, much less explain, how refusing to participate in Defendants' supposed "deceptive and unfair business practices" was the "only adequate means to promote the public policy." His proposed new Count 5 cannot survive a motion to dismiss, much less summary judgment, especially after development of a factual record on this point. His requested amendment should be denied on this additional ground.

His proposed new Count 6, for "Wrongful Withholding of Wages, including Upon Termination" under "RCW 49.48.010," and Count 7, for "Intentional Wrongful Withholding of Wages" under "RCW 49.52.050," are also subject to dismissal, and amendment should be denied on this basis. Under Washington law, a party can recover double damages when an employer "willfully" withholds wages. *See* RCW 49.52.070. But Washington courts have made it clear that unpaid wages are not "willfully" withheld where a "bona fide dispute" exists over whether they are owed—in that case, the employee may have a breach claim but is not entitled to double the disputed amount. *Busey v. Richland Sch. Dist.*, 172 F. Supp. 3d 1167, 1181 (E.D. Wash. 2016) (citing *Schilling v. Radio Holdings, Inc.*, 961 P.2d 371, 374–78 (Wash. 1998)). Mr. Mewawalla insists that Freedom had no "Cause" to fire him under his employment agreement. But his double-damages claim requires more than that—to satisfy the "willfulness" element, he must show that it is not even "'fairly debatable' as to whether [his severance] must be paid." *Id.* It is common for this issue to be

resolved in the employer's favor on summary judgment, *Dreis v. Dearborn Nat. Life Ins. Co.*, 2015 WL 4508696, at *8–9 (W.D. Wash. July 23, 2015); *Brediger v. Gen. Nutrition Corp.*, 2015 WL 5797095, at *5–6 (W.D. Wash. Oct. 2, 2015); *Edman v. Kindred Nursing Ctrs. W., L.L.C.*, 2016 WL 6836884, at *10–11 (W.D. Wash. Nov. 21, 2016), and would be here as well. His employment agreement defines "Cause" as any conduct by Mr. Mewawalla that Freedom's CEO believes "is, or is reasonably likely to be, materially harmful to the business, interests or reputation of the Company." ECF 130-5 at 6. Because ample evidence exists to support Stanley Middleman's conclusion on this point, no reasonable jury could find that no "bona fide dispute" existed over Mr. Mewawalla's claim to severance payments.

**B. <u>"First" Amended Complaints Proposed Late In The Case Receive No Special Treatment.</u>**

While courts consider whether there have been prior amendments, *see Jardin v. Datallegro, Inc.*, 2011 WL 1897164, at *1 (S.D. Cal. May 17, 2011), no special treatment is accorded to motions for leave filed as late as this one, *see, e.g.*, *Acri*, 781 F.2d at 1398–99; *Jackson*, 902 F.2d at 1386–89; *M/V Am. Queen v. San Diego Marine Const. Corp.*, 708 F.2d 1483, 1492 (9th Cir. 1983); *Quan v. S.F. Police Dep't*, 2011 WL 2470477, at *5 (N.D. Cal. June 21, 2011). The cases cited by Mr. Mewawalla, ECF 163 at 10, are not factually comparable. In *Jardin*, 2011 WL 1897164, the case was "in the early stages of litigation" when the plaintiff sought leave to amend. *Id.* at *1. In *Everflow Tech. Corp. v. Millenium Elecs., Inc.*, 2008 WL 4793410 (N.D. Cal. Nov. 3, 2008), the plaintiff requested leave to amend "within a month of discovering new facts in the case." *Id.* at *1. By comparison, it "weighs heavily against allowing leave" to file even a *first* amended complaint where the parties have completed discovery and received a summary judgment ruling, as they have here. *Quan*, 2011 WL 2470477, at *5 (quoting *Medimmune, Inc. v. Genentech, Inc.*, 2004 WL 5327194, at *2 (C.D. Cal. Feb. 18, 2004)).

**<u>CONCLUSION</u>**

For the reasons stated above, the Court should deny Plaintiff's Motion for Leave to Amend the Complaint.

DATED: November 17, 2023

Respectfully submitted,

By: */s/* Paul B. Gaffney

**DUANE MORRIS LLP**
Stephen H. Sutro
Robert J. Nolan

**WILLIAMS & CONNOLLY LLP**
Paul B. Gaffney
George A. Borden (admitted *pro hac vice*)
Ricardo Leyva (admitted *pro hac vice*)
Donovan J. Stone (admitted *pro hac vice*)

Attorneys for Defendants and Counterclaimants