1
2
3
4                    UNITED STATES DISTRICT COURT
5                   NORTHERN DISTRICT OF CALIFORNIA
6
7   RAHUL MEWAWALLA,                          Case No.  21-cv-09700-EMC
8              Plaintiff,
9       v.                                    REVISED FINAL JURY
                                              INSTRUCTIONS
10  STANLEY C. MIDDLEMAN, et al.,
11             Defendants.
12
13          The Court issues a revised set of instructions. The Court has modified Instruction Nos. 2,
14  4, and 29, and removed Instruction No. 43 re: Defendants' counterclaim. The Court denies the
15  Parties' requests for additional instructions on prejudgment interest, or disclosure of salary.
16
17          **IT IS SO ORDERED**.
18
19  Dated: February 10, 2025
20
21
22                                            _____
                                             EDWARD M. CHEN
23                                           United States District Judge
24
25
26
27
28

# I.    **PRELIMINARY INSTRUCTIONS**

1) <u>INSTRUCTION NO. 1 DUTY OF JURY</u>

Members of the jury: You are now the jury in this case. It is my duty to instruct you on the law.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

At the end of the trial I will give you final instructions. It is the final instructions that will govern your duties.

Please do not read into these instructions, or anything I may say or do, that I have an opinion regarding the evidence or what your verdict should be.

United States District Court
Northern District of California

1     2)  <u>INSTRUCTION NO. 2 CLAIMS AND DEFENSES</u>

2          To help you follow the evidence, I will give you a brief summary of the positions of the

3     parties:

4          Plaintiff Rahul Mewawalla asserts that Defendants Stanley Middleman and Freedom

5     Mortgage Corporation ("Freedom" or "FMC") made false promises and omitted material facts in

6     order to induce Mr. Mewawalla to accept an offer to work for Freedom and to help co-found and

7     lead a new company—Xpanse, LLC ("Xpanse"). Mr. Mewawalla alleges that Freedom breached

8     the employment contract by terminating his employment without Cause and failing to pay him

9     severance and other benefits, such as 401(k) matching benefits and paid time off.

10          He further alleges that he entered into a contract with Xpanse and that Xpanse breached it

11    by failing to pay him severance after terminating his employment without Cause and by failing to

12    pay other benefits he believes he was owed under that contract.  He also alleges that Xpanse

13    breached an implied covenant of good faith and fair dealing by failing to pay those benefits.

14    Mewawalla has the burden of proving these claims.

15          Defendants deny those claims.  They also further contend that Mr. Mewawalla is barred by

16    the doctrine of unclean hands and fraudulent inducement from bringing his claims, because, they

17    say, he misrepresented his credentials and professional accomplishments during the hiring process.

18    Mr. Mewawalla denies these allegations, and the burden of proof is on the Defendants to prove

19    them.

United States District Court
Northern District of California

3

United States District Court
Northern District of California

1    3)  <u>INSTRUCTION NO. 3: IMPLICIT/UNCONSCIOUS BIAS</u>

2         We all have feelings, assumptions, perceptions, fears, and stereotypes about others.  Some

3    biases we are aware of, and others we might not be fully aware of, which is why they are called

4    implicit or unconscious biases.  No matter how unbiased we think we are, our brains are hard-

5    wired to make unconscious decisions. We look at others and filter what they say through our own

6    personal experience and background.  Because we all do this, we often see life and evaluate

7    evidence in a way that tends to favor people who are like ourselves, or who have had life

8    experiences like our own.  We can also have biases about people like ourselves. One common

9    example is the automatic association of male with career and female with family. Bias can affect

10   our thoughts, how we remember what we see and hear, whom we believe or disbelieve, and how

11   we make important decisions.

12        As jurors, you are being asked to make an important decision in the case.  You must one,

13   take the time you need to reflect carefully and thoughtfully about the evidence.

14        Two, think about why you are making the decision you are making and examine it for bias.

15   Reconsider your first impressions of the people and the evidence in this case.  If the people

16   involved in this case were from different backgrounds, for example, richer or poorer, more or less

17   educated, older or younger, or of a different gender, gender identity, race, religion or sexual

18   orientation, would you still view them, and the evidence, the same way?

19        Three, listen to one another.  You must carefully evaluate the evidence and resist, and help

20   each other resist, any urge to reach a verdict influenced by bias for or against any party or witness.

21   Each of you have different backgrounds and will be viewing this case in light of your own

22   insights, assumptions and biases.  Listening to different perspectives may help you to better

23   identify the possible effects these hidden biases may have on decision making.

24        And four, resist jumping to conclusions based on personal likes or dislikes, generalizations,

25   gut feelings, prejudices, sympathies, stereotypes, or unconscious biases.

26        The law demands that you make a fair decision based solely on the evidence, your

27   individual evaluations of that evidence, your reason and common sense, and these instructions.

28

4

4)  <u>INSTRUCTION NO. 4 STIPULATIONS OF FACT</u>

The parties have agreed to certain facts that will be read to you. You must therefore treat these facts as having been proved.

STIPULATED FACTS:

1. Defendant Freedom Mortgage Corporation is in the business of originating and servicing residential mortgage loans.

2. Defendant Stanley Middleman is the founder, majority owner, and CEO of Freedom Mortgage Corporation.

3. Stanley Middleman has two sons, non-parties Michael Middleman and Gregory Middleman, both of whom work at Freedom Mortgage Corporation.

4. On July 10, 2019, Plaintiff Rahul Mewawalla sent via email a copy of his resume to Stanley Middleman, seeking potential employment.

5. Over the course of late 2019 and early 2020, Mr. Mewawalla, on the one hand, and Freedom Mortgage Corporation, on the other, engaged in extensive negotiations over an employment agreement.

6. Mr. Mewawalla retained an attorney named Francisco Palao-Ricketts to represent him in those negotiations.

7. Freedom retained an attorney named Martha Doty to represent it in those negotiations.

8. Around the same time, Rahul Mewawalla also engaged in negotiations with Engel & Volkers regarding a potential position and retained a different attorney to represent him in connection with those negotiations.

9. Rahul Mewawalla did not enter into a contract with Engel & Volkers.

10. Rahul Mewawalla signed an employment agreement with Freedom Mortgage Corporation on February 18, 2020, and Stanley Middleman countersigned on February 26, 2020.

11. A complete copy of Rahul Mewawalla's written employment agreement is at Trial Exhibit No. 1.

12. Under the employment agreement, Mr. Mewawalla was an "employee at will."

13. Under the employment agreement, Mr. Mewawalla is entitled to certain severance benefits if his employment was "terminated by the Company without Cause."

14. The parties did not sign any version of the draft employment agreement with Freedom Technology Corporation (now called Xpanse), which is appended to Trial Exhibit No. 1 as Exhibit A.

15. The parties never amended the agreement in writing.

16. Rahul Mewawalla began work on March 30, 2020.

17. Mr. Mewawalla received his signing bonus in two lump sum payments of $500,000 made on March 30, 2020 and October 30, 2020.

18. The entity that was envisaged to be called FTC was ultimately incorporated on May 27, 2020 as Archwell Technology Company.

19. Archwell Technology Company changed its name to Xpanse, Inc. in July 2020.

20. Xpanse was wholly owned by Archwell Holdings, LLC.

21. Archwell Holdings, LLC ("Archwell") is a Florida limited liability company whose investment activities are controlled by Michael and Gregory Middleman, through trusts naming them as beneficiaries.

22. Xpanse did not adopt and establish an equity incentive plan on the date of its incorporation.

23. Gregory Middleman was a co-founder of Xpanse and its Chief Operating Officer.

24. Mr. Mewawalla was Xpanse's President and Chief Executive Officer.

25. Timothy Beard was employed as a part time consultant to Xpanse from late

September 2020 to November 2020, and then as Xpanse's Chief Financial

Officer from November 2020 until January 21, 2021.

26. On December 24, 2020, Xpanse's corporate form was changed from

corporation to limited liability company.

27. Rahul Mewawalla was terminated on January 21, 2021.

28. A copy of the Termination Notice is at Trial Exhibit No. 63.

29. Freedom Mortgage Corporation stated that the termination was for Cause.

30. Freedom has not paid any severance amount to Mr. Mewawalla.

31. Mr. Mewawalla has not reimbursed Defendants any portion of his signing

bonus.

32. Freedom Mortgage Corporation's complete personnel file for Rahul Mewawalla is at

Trial Exhibit No. 345.

1    5)  INSTRUCTION NO. 5 BURDEN OF PROOF – PREPONDERANCE OF THE

2    EVIDENCE

3        When a party has the burden of proving any claim or affirmative defense by a

preponderance of the evidence, it means you must be persuaded by the evidence that the claim or

affirmative defense is more probably true than not true.

        You should base your decision on all of the evidence, regardless of which party presented

it.

United States District Court
Northern District of California

6)  <u>INSTRUCTION NO. 6 WHAT IS EVIDENCE</u>

The evidence you are to consider in deciding what the facts are consists of:

1.  the sworn testimony of any witness;

2.  the exhibits that are admitted into evidence;

3.  any facts to which the lawyers have agreed; and

4.  any facts that I may instruct you to accept as proved.

7)   INSTRUCTION NO. 7 WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1)    Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they may say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)    Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3)    Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered. In addition, some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.

(4)    Anything you may see or hear when the court is not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

8)  <u>INSTRUCTION NO. 8 EVIDENCE FOR LIMITED PURPOSE</u>

Some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

United States District Court
Northern District of California

United States District Court
Northern District of California

9) <u>INSTRUCTION NO. 9 DIRECT AND CIRCUMSTANTIAL EVIDENCE</u>

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience and common sense.

1

10)  <u>INSTRUCTION NO. 10 RULING ON OBJECTIONS</u>

2

There are rules of evidence that control what can be received into evidence. When a lawyer

3

asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not

4

permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question

5

may be answered or the exhibit received. If I sustain the objection, the question cannot be

6

answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you

7

must ignore the question and must not guess what the answer might have been.

8

Sometimes I may order that evidence be stricken from the record and that you disregard or

9

ignore that evidence. That means when you are deciding the case, you must not consider the

10

stricken evidence for any purpose.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11) <u>INSTRUCTION NO. 11 CREDIBILITY OF WITNESSES</u>

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1)    the opportunity and ability of the witness to see or hear or know the things testified to;

(2)    the witness's memory;

(3)    the witness's manner while testifying;

(4)    the witness's interest in the outcome of the case, if any;

(5)    the witness's bias or prejudice, if any;

(6)    whether other evidence corroborated or contradicted the witness's testimony;

(7)    the reasonableness of the witness's testimony in light of all the evidence; and

(8)    any other factors that bear on believability.

You must avoid allowing your determination of credibility to be influenced by your own bias, conscious or unconscious, based on a witness's race, color, religious beliefs, national ancestry, sexual orientation, gender identity, gender, or economic circumstances in your determination of credibility.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened.  People often forget things or make mistakes in what they remember.  Also, two people may see the same event but remember it differently.  You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said.  On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

United States District Court
Northern District of California

14

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.  What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

United States District Court
Northern District of California

12) <u>INSTRUCTION NO. 12 CONDUCT OF THE JURY</u>

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, or computer, or any other electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, Tiktok, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict:  do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it[,although I have no information that there will be news reports about this case]; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use the Internet or any other resource to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the

16

1    parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read

2    or hear anything touching on this case in the media, turn away and report it to me as soon as

3    possible.

4         These rules protect each party's right to have this case decided only on evidence that has

5    been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy

6    of their testimony is tested through the trial process. If you do any research or investigation

7    outside the courtroom, or gain any information through improper communications, then your

8    verdict may be influenced by inaccurate, incomplete or misleading information that has not been

9    tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if

10   you decide the case based on information not presented in court, you will have denied the parties a

11   fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you

12   follow these rules.

13        A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a

14   mistrial could result that would require the entire trial process to start over. If any juror is exposed

15   to any outside information, please notify the court immediately.

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

1    13) INSTRUCTION NO. 13 NO TRANSCRIPT AVAILABLE TO JURY

2        I urge you to pay close attention to the trial testimony as it is given. During deliberations

3    you will not have a transcript of the trial testimony.

1    14) <u>INSTRUCTION NO. 14 TAKING NOTES</u>

2          If you wish, you may take notes to help you remember the evidence. If you do take notes,

3    please keep them to yourself until you go to the jury room to decide the case. Do not let notetaking

4    distract you. When you leave, your notes should be left in the courtroom / jury room. No one will

5    read your notes. Although the jury will have all the admitted exhibits during deliberation, you may

6    want to note exhibit numbers in your notes if you think that will aid your memory. You will be

7    given an index of exhibits at the end of the case.

8          Whether or not you take notes, you should rely on your own memory of the evidence.

9    Notes are only to assist your memory. You should not be overly influenced by your notes or those

10   of other jurors.

1    15) <u>INSTRUCTION NO. 15 BENCH CONFERENCES AND RECESSES</u>

2        From time to time during the trial, it may become necessary for me to talk with the

3    attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is

4    present in the courtroom, or by calling a recess. Please understand that while you are waiting, we

5    are working. The purpose of these conferences is not to keep relevant information from you, but to

6    decide how certain evidence is to be treated under the rules of evidence and to avoid confusion

7    and error.

8        Of course, we will do what we can to keep the number and length of these conferences to a

9    minimum. I may not always grant an attorney's request for a conference. Do not consider my

10   granting or denying a request for a conference as any indication of my opinion of the case or of

11   what your verdict should be.

United States District Court
Northern District of California

16) <u>INSTRUCTION NO. 16 OUTLINE OF TRIAL</u>

Trials proceed in the following way: First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. A party is not required to make an opening statement.

The plaintiff will then present evidence, and counsel for the defendant may cross-examine. Then the defendant may present evidence, and counsel for the plaintiff may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## II.    INSTRUCTIONS DURING TRIAL

17) INSTRUCTION NO. 17 DEPOSITION IN LIEU OF LIVE TESTIMONY

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

1    18) <u>INSTRUCTION NO. 18 IMPEACHMENT EVIDENCE—WITNESS</u>

2        The evidence that a witness lied under oath on a prior occasion or gave different or

3    inconsistent testimony on a prior occasion may be considered, along with all other evidence, in

4    deciding whether or not to believe the witness and how much weight to give to the testimony of

5    the witness and for no other purpose.

19) <u>INSTRUCTION NO. 19 USE OF INTERROGATORIES</u>

Evidence will now be presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

1    20) <u>INSTRUCTION NO. 20 USE OF REQUESTS FOR ADMISSION</u>

2        Evidence will now be presented to you in the form of admissions to the truth of certain

3    facts. These admissions were given in writing before the trial, in response to requests that were

4    submitted under established court procedures. You must treat these facts as having been proved.

United States District Court
Northern District of California

1    21) <u>INSTRUCTION NO. 21 EXPERT OPINION</u>

2        You are about to hear testimony from various witnesses who will testify to opinions and

3    the reasons for their opinions. This opinion testimony is allowed, because of the education or

4    experience of each witness.

5        Such opinion testimony should be judged like any other testimony. You may accept it or

6    reject it, and give it as much weight as you think it deserves, considering the witness's education

7    and experience, the reasons given for the opinion, and all the other evidence in the case.

22) <u>INSTRUCTION NO. 22 CHARTS AND SUMMARIES NOT RECEIVED IN</u>
<u>EVIDENCE</u>

Certain charts and summaries not admitted into evidence may be shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

23) <u>INSTRUCTION NO. 23 CHARTS AND SUMMARIES RECEIVED IN EVIDENCE</u>

Certain charts and summaries may be admitted into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the testimony or other admitted evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

### III.  INSTRUCTIONS AFTER THE CLOSE OF EVIDENCE

24) <u>INSTRUCTION NO. 24 DUTY OF JURY</u>

Members of the Jury: Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you on the law that applies to this case.

Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, sympathy, or irrelevant biases whether conscious or unconscious.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

25) <u>INSTRUCTION NO. 25 FRAUD: FALSE PROMISE (COUNT 1)</u>

Mr. Mewawalla claims Freedom Mortgage and Stanley Middleman made false promises about their plans for Xpanse that Mr. Mewawalla relied on in deciding to accept employment there.

To establish this claim, Mr. Mewawalla must prove all of the following:

1.    that Mr. Middleman and/or Freedom made **at least one** of following promises:

    (a) Xpanse would be operated and managed completely separate from Freedom;

    (b) Xpanse would be operated and managed in such a way that it could proceed through an initial public offering in 4-to-5 years;

    (c) Mr. Mewawalla would report only to Stanley Middleman;

    (d) Freedom would contribute revenue to Xpanse;

    (e) Freedom would transfer significant intellectual property and technology assets to Xpanse;

    (f) Freedom would transfer technologists to Xpanse;

    (g) Mr. Middleman would use his relationships with other mortgage companies to attempt to convince them to use Xpanse's products; and/or

    (h) Mr. Mewawalla would be employed at least through Xpanse's initial public offering.

2.    that Mr. Middleman and/or Freedom did not honor that promise made and had no intention of doing so at the time they were made;

3.    that Mr. Middleman and/or Freedom intended Mr. Mewawalla to rely on that made promise;

4.    that Mr. Mewawalla reasonably relied on that made promise;

5.    that Mr. Mewawalla was harmed; and

6.    that Mr. Mewawalla's reliance on that promise made was a substantial factor in causing his harm.

1    26) <u>INSTRUCTION NO. 26 FRAUD: CONCEALMENT (COUNT 2)</u>

2        Mr. Mewawalla claims that he was harmed because Freedom Mortgage and Stanley

3    Middleman concealed certain information. To establish this claim, Mr. Mewawalla must prove

4    each and all of the following:

5        1. That Freedom and/or Mr. Middleman intentionally failed to disclose certain facts that

6        were known only to them and that Mr. Mewawalla could not have discovered;

7        2. that Mr. Mewawalla did not know of the concealed fact[s];

8        3. that Freedom and/or Mr. Middleman intended to deceive Mr. Mewawalla by

9        concealing the fact[s];

10        4. that had the omitted information been disclosed, Mr. Mewawalla reasonably relied on

11        that concealment – *i.e.* he would have behaved differently (as described in Instruction Nos.

12        27 and 28);

13        5. that Mr. Mewawalla was harmed; and

14        6. that Freedom and/or Mr. Middleman's concealment was a substantial factor in

15        causing Mr. Mewawalla's harm.

27) <u>INSTRUCTION NO. 27 RELIANCE</u>

Mr. Mewawalla relied on false promises or concealments of information if he proves that:

1. the false promise or concealment substantially influenced him to work for FMC and/or Xpanse and forego other employment opportunities; and

2. he would probably not have worked for FMC and/or Xpanse and given up other opportunities without the concealment or false promise.

It is not necessary for a concealment or false promise to be the only reason for Mr. Mewawalla's decision .

28) <u>INSTRUCTION NO. 28 REASONABLE RELIANCE</u>

In determining whether Mr. Mewawalla's reliance on the false promise or concealment was reasonable, Mr. Mewawalla must first prove that the matter was material. A matter is material if a reasonable person would find it important in deciding what to do.

If you decide that the matter is material, you must then decide whether it was reasonable for Mr. Mewawalla to rely on the false promise or concealment. In making this decision, take into consideration Mr. Mewawalla's intelligence, knowledge, education, and experience, as well as the terms of the written contract.

However, it is not reasonable for anyone to rely on any false promise or concealment that is preposterous. It also is not reasonable for anyone to rely on a false promise or concealment if facts that are within his observation show that it is obviously false.

1    29) <u>INSTRUCTION NO. 29 DAMAGES FOR FRAUD AND CONCEALMENT</u>

2        If you decide that Mr. Mewawalla has proved either his false promise or concealment

3    claims, you also must decide how much money will reasonably compensate Mr. Mewawalla for

4    the harm. This compensation is called "damages."

5        The amount of damages must include an award for all harm that Defendants was a

6    substantial factor in causing, even if the particular harm could not have been anticipated.

7        Mr. Mewawalla must prove the amount of his damages. However, Mr. Mewawalla does

8    not have to prove the exact amount of damages that will provide reasonable compensation for the

9    harm. You must not speculate or guess in awarding damages.

10        In this case, Mr. Mewawalla is seeking damages in the form of lost income and other

11    benefits from an employment opportunity with a German firm—Engel & Volkers—that Mr.

12    Mewawalla claims he forewent to accept his employment offer with Freedom. If you find for Mr.

13    Mewawalla on his fraud claim, you may award Mr. Mewawalla the difference between, on the one

14    hand, the value he would have received from the Engel & Volkers opportunity; and, on the other

15    hand, (i) the value he actually received from Freedom, (ii) the value he actually received from any

16    other employer during the relevant time period, (iii) and any damages for breach of contract,

17    should you so award.

18        Mr. Mewawalla may also recover amounts that he reasonably spent out of pocket in

19    reliance on Defendants' false promise or concealment if those amounts would not otherwise have

20    been spent.

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

30) <u>INSTRUCTION NO. 30 BREACH OF CONTRACT—INTRODUCTION</u>

As you have heard, Mr. Mewawalla asserts a claim for breach of contract against both Freedom and Xpanse.

Freedom does not dispute that it had a contract with Mr. Mewawalla under the terms of the Employment Agreement ("Agreement") that was admitted as evidence at trial. Xpanse, however, maintains that it never had an employment contract with Mr. Mewawalla.

Mr. Mewawalla alleges that Freedom and Xpanse owe him severance benefits under Section 8(d) of the Agreement because, he contends, Defendants did not have "Cause" to fire him as the Agreement defines that term. Defendants contend that Mr. Middleman had "Cause" to terminate Mr. Mewawalla under the Agreement and therefore owed him no severance benefits.

Mr. Mewawalla also alleges that Freedom and Xpanse breached the contract with him by failing to pay him certain benefits he believes he earned during his employment. Freedom and Xpanse deny that these amounts are owed.

1    31) INSTRUCTION NO. 31 CONTRACT FORMATION—ESSENTIAL FACTUAL

2         ELEMENTS

3         As noted, Mr. Mewawalla and Xpanse disagree over whether he had an employment

4    contract with Xpanse in addition to his employment contract with Freedom. Mr. Mewawalla bears

5    the burden of providing that a contract with Xpanse existed. To prove this, Mr. Mewawalla must

6    prove all of the following:

7         1. That the contract terms were clear enough that the parties could understand what each

8         was required to do;

9         2. That the parties agreed to give each other something of value [a promise to do

10   something or not to do something may have value]; and

11        3. That the parties agreed to the terms of the contract.

12        When you examine whether the parties agreed to the terms of the contract, ask yourself if,

13   under the circumstances, a reasonable person would conclude, from the words and conduct of each

14   party, that there was an agreement. You may not consider the parties' hidden intentions, only their

15   words and conduct.

16        If Mr. Mewawalla did not prove all three of the above, then a contract was not created

17   between him and Xpanse, in which case Xpanse cannot be held liable for breach of contract or for

18   breach of the implied covenant of good faith and fair dealing.

United States District Court
Northern District of California

36

1    32) <u>INSTRUCTION NO. 32 BREACH OF CONTRACT—FREEDOM (COUNT 5)</u>

2         To recover damages from Freedom for breach of contract, Mr. Mewawalla must prove, by

3    a preponderance of the evidence, that (a) Mr. Mewawalla was terminated without "Cause," as that

4    term is defined in Section 8(f)(i) of the Employment Agreement, and Freedom failed to pay

5    severance benefits; or (b) Freedom failed to pay other benefits to which Mr. Mewawalla was

6    entitled under the contract.

33) <u>INSTRUCTION NO. 33 BREACH OF CONTRACT—XPANSE (COUNT 5)</u>

To recover damages from Xpanse for breach of contract, Mr. Mewawalla must prove by a preponderance of the evidence that:

1.  Mr. Mewawalla and Xpanse entered into an employment contract containing the same termination provisions and benefits as those in the Employment Agreement with Freedom Mortgage Corporation; and

2.  (a) Mr. Mewawalla was terminated without "Cause" as that term is defined in Section 8(f)(i), and Xpanse failed to pay severance benefits pursuant to Section 8(d); and/or (b) Xpanse failed to pay Mr. Mewawalla benefits to which he was entitled under the contract.

1    34) <u>INSTRUCTION NO. 34 AT-WILL EMPLOYMENT</u>

2         The parties agree that Mr. Mewawalla was what the law calls an at-will employee. That

3    means Defendants were legally entitled to fire Mr. Mewawalla for any lawful reason or no reason

4    at all. Defendants did not need "Cause" to terminate Mr. Mewawalla's employment. Whether

5    there was "Cause" or not only affects whether he is entitled to severance benefits.

35) <u>INSTRUCTION NO. 35 BREACH OF COVENANT (COUNT 6)</u>

In every contract or agreement there is an implied promise of good faith and fair dealing. This implied promise means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract. Good faith means honesty of purpose without any intention to mislead or to take unfair advantage of another. Generally speaking, it means being faithful to one's duty or obligation. However, the implied promise of good faith and fair dealing cannot create obligations that are inconsistent with the terms of the contract.

Mr. Mewawalla claims that Xpanse violated the duty to act fairly and in good faith. To establish this claim, Mr. Mewawalla must prove all of the following:

1. That Mr. Mewawalla and Xpanse entered into a contract;

2. That Mr. Mewawalla did all, or substantially all of the significant things that the contract required him to do or that he was excused from having to do those things;

3. That all conditions required for Xpanse's performance had occurred or were excused;

4. That Xpanse failed to act in good faith when determining that it the right to terminate Mr. Mewawalla for "Cause"; and

5. That Mr. Mewawalla was harmed by Xpanse's conduct.

If you decide that Xpanse was contractually obligated to pay the above mentioned benefits and that Xpanse's failure to make such payments was a breach of contract under Count 5, then Xpanse is not also liable for breach of the implied covenant of good faith and fair dealing under Count 6.

1    36) INSTRUCTION NO. 36 INTRODUCTION TO CONTRACT DAMAGES

2        If you decide that Mr. Mewawalla has proved his claim against Defendants for breach of

3    contract, you also must decide how much money will reasonably compensate him for the harm

4    caused by the breach. This compensation is called "damages." The purpose of such damages is to

5    put Mr. Mewawalla in as good a position as he would have been if Defendants had performed as

6    promised.

7        To recover damages for any harm, Mr. Mewawalla must prove that when the contract was

8    made, both parties knew or could reasonably have foreseen that the harm was likely to occur in the

9    ordinary course of events as result of the breach of the contract.

10       Mr. Mewawalla also must prove the amount of his damages according to the following

11   instructions. He does not have to prove the exact amount of damages. You must not speculate or

12   guess in awarding damages.

13       Mr. Mewawalla claims damages for:

14       (1) unpaid severance;

15       (2) unpaid benefits;

16       (3) unpaid paid time off.

1    37) INSTRUCTION NO. 37 AFFIRMATIVE DEFENSE: FRAUD

2        Defendants claim that no contract was created because their consent was obtained by fraud.

3    This is an affirmative defense to Counts 5 and 6, and to succeed, Defendants must prove all of the

4    following:

5        1.   That Mr. Mewawalla made representations to Freedom about his prior employment;

6        2.   That Mr. Mewawalla knew that the representations were not true;

7        3.   That Mr. Mewawalla made the representations to persuade Defendants to agree to the

8             contract;

9        4.   That Defendants Stanley Middleman, Freedom, and/or Xpanse reasonably relied on

10            these representations; and

11       5.   That Defendants  Stanley Middleman, Freedom, and/or Xpanse would not have

12            entered into the contract if they had known that the representations were not true.

13       If you decide that either or both Defendant Freedom or Xpanse has proven all of the above,

14   then no contract was created with that Defendant.

38) <u>INSTRUCTION NO. 38 AFFIRMATIVE DEFENSE—UNCLEAN HANDS</u>

Defendants contend Mr. Mewawalla may not recover any damages on any of his claims because, during the hiring process, he misrepresented material facts about his prior employment. This allegation that Mr. Mewawalla acted with what the law calls "unclean hands" is an affirmative defense that Defendants bear the burden of proving. If they do so in connection with one or more of Mr. Mewawalla's claims, then he may not recover on such claim(s) even if he has otherwise proved all of the elements of such claim(s).

The doctrine of unclean hands bars a plaintiff from obtaining damages when he has violated a duty of good faith or has acted unconscionably in connection with the same subject matter out of which he seeks a remedy. The misconduct alleged to constitute "unclean hands" need not constitute a crime or actionable tort, but not every wrongful act constitutes unclean hands. There must be a direct relationship between the claimed misconduct by a plaintiff and the claimed harm by the defendants so that it would be unfair to allow the plaintiff to recover on her claim.

Although Defendants' "unclean hands" defense applies to all of Mr. Mewawalla's claims, you must weigh whether his alleged misconduct should bar him from recovering damages on a claim-by-claim, and Defendant-by Defendant, basis. That is, you must decide whether Mr. Mewawalla's conduct constituted "unclean hands" and whether it had a direct relationship to each of the false promise claim, the concealment claim, the breach of contract claim, and the breach of covenant of good faith claim.

1    39) <u>INSTRUCTION NO. 39 LIMITATION ON REMEDIES—AFTER-ACQUIRED</u>

2    <u>EVIDENCE</u>

3    Defendants Freedom Mortgage Corporation and Xpanse contend that the doctrine of after-

4    acquired evidence applies to Mr. Mewawalla's claims for breach of contract (Count 5). Freedom

5    Mortgage Corporation and Xpanse contend that after they discharged Mr. Mewawalla, they

6    discovered that Mr. Mewawalla misrepresented facts about his prior employment. Freedom

7    Mortgage Corporation and Xpanse contend that they would have discharged Mr. Mewawalla

8    anyway if they had known this. You must decide whether Freedom Mortgage Corporation and

9    Xpanse have proved all of the following:

10    1. That Mr. Mewawalla misrepresented facts about his prior employment;

11    2. That Mr. Mewawalla's misrepresentations were sufficiently severe that Freedom

12    Mortgage Corporation and Xpanse would have discharged him for that reason alone had Freedom

13    Mortgage Corporation and Xpanse known of them; and

14    3. That Freedom Mortgage Corporation and Xpanse would have discharged Mr.

15    Mewawalla for the misrepresentations as a matter of settled company policy.

16    If you find that Freedom Mortgage Corporation and Xpanse have proved that Mr.

17    Mewawalla misrepresented facts about his prior employment and that had Freedom Mortgage

18    Corporation and Xpanse known of the misrepresentations earlier, they would have discharged Mr.

19    Mewawalla for that reason alone as required by the elements above, then Mr. Mewawalla may

20    recover damages only for any time before the date on which Freedom Mortgage Corporation and

21    Xpanse discovered the misrepresentations.

22    Freedom Mortgage Corporation and Xpanse must prove the date of discovery if it is

23    contested.

24

25

26

27

28

United States District Court
Northern District of California

40) <u>INSTRUCTION NO. 40 OBLIGATION TO PAY MONEY ONLY</u>

To recover damages for the breach of a contract to pay money, Mr. Mewawalla must prove the amount due under the contract.

United States District Court
Northern District of California

41) <u>INSTRUCTION NO. 41 PUNITIVE DAMAGES</u>

If you decide that Stanley Middleman's or Freedom Mortgage Corporation's conduct caused Mr. Mewawalla harm, you must decide whether that conduct justifies an award of punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed the plaintiff and to discourage similar conduct in the future.

You may award punitive damages against Stanley Middleman only if Mr. Mewawalla proves by clear and convincing evidence that Stanley Middleman engaged in that conduct with malice, oppression, or fraud.

To obtain punitive damages against Stanley Middleman, Mr. Mewawalla must prove one of the following by clear and convincing evidence:

1. That the malice, oppression, or fraud was the conduct of Stanley Middleman; or

2. That the conduct constituting malice, oppression, or fraud was authorized by Stanley Middleman; or

3. Stanley Middleman knew of the conduct constituting malice, oppression, or fraud and adopted or approved that conduct after it occurred.

You may award punitive damages against Freedom Mortgage Corporation only if Mr. Mewawalla proves by clear and convincing evidence that Freedom Mortgage Corporation acted with malice, oppression, or fraud.

To obtain punitive damages against Freedom Mortgage Corporation, Mr. Mewawalla must prove one of the following by clear and convincing evidence:

1. That the malice, oppression, or fraud was the conduct of one or more officers, directors, or managing agents of Freedom Mortgage Corporation, who acted on behalf of Freedom Mortgage Corporation; or

2. That the conduct constituting malice, oppression, or fraud was authorized by one or more officers, directors, or managing agents of Freedom Mortgage Corporation; or

3. That one or more officers, directors, or managing agents of Freedom Mortgage Corporation knew of the conduct constituting malice, oppression, or fraud and adopted or approved that conduct after it occurred.

1    "Malice" means that a defendant acted with intent to cause injury or that a defendant's

2    conduct was despicable and was done with a willful and knowing disregard of the rights or safety

3    of another. A defendant acts with knowing disregard when the defendant is aware of the probable

4    dangerous consequences of the defendant's conduct and deliberately fails to avoid those

5    consequences.

6         "Oppression" means that a defendant's conduct was despicable and subjected Mr.

7    Mewawalla to cruel and unjust hardship in knowing disregard of his rights.

8         "Despicable conduct" is conduct that is so vile, base, or contemptible that it would be

9    looked down on and despised by reasonable people.

10        "Fraud" means that a defendant intentionally misrepresented or concealed a material fact

11   and did so intending to harm Mr. Mewawalla.

12        An employee is a "managing agent" if the employee exercises substantial independent

13   authority and judgment in corporate decision making such that the employee's decisions

14   ultimately determine corporate policy.

15        There is no fixed formula for determining the amount of punitive damages, and you are not

16   required to award any punitive damages. If you decide to award punitive damages, you should

17   consider all of the following factors separately for each defendant in determining the amount:

18   (a) How reprehensible was that defendant's conduct? In deciding how reprehensible a

19        defendant's conduct was, you may consider, among other factors:

20        1.  Whether the conduct caused physical harm;

21        2.  Whether the defendant disregarded the health or safety of others;

22        3.  Whether Mr. Mewawalla was financially weak or vulnerable and the defendant knew

23             Mr. Mewawalla was financially weak or vulnerable and took advantage of him;

24        4.  Whether the defendant's conduct involved a pattern or practice; and

25        5.  Whether the defendant acted with trickery or deceit.

26   (b) Is there a reasonable relationship between the amount of punitive damages and Mr.

27        Mewawalla's harm?

28

United States District Court
Northern District of California

1     (c) In view of that defendant's financial condition, what amount is necessary to punish that

2          defendant and discourage future wrongful conduct? You may not increase the punitive

3          award above an amount that is otherwise appropriate merely because a defendant has

4          substantial financial resources.

5          Punitive damages may not be used to punish a defendant for the impact of his alleged

6     misconduct on persons other than Mr. Mewawalla.

1      42) INSTRUCTION NO. 42 CLEAR AND CONVINCING EVIDENCE

2          As I mentioned, Mr. Mewawalla must persuade you that he is entitled to punitive damages

3   by clear and convincing evidence, which is a higher burden of proof.  This means he must

4   persuade you that it is highly probable that Defendants Stanley Middleman or Freedom Mortgage

5   Corporation acted with malice, oppression, or fraud as I have defined those terms.

43) [NONE]

# IV.    FINAL INSTRUCTIONS

44) <u>INSTRUCTION NO. 44 DUTY TO DELIBERATE</u>

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

Perform these duties fairly and impartially.  Do not allow personal likes or dislikes, sympathy, prejudice, fear, public opinion, or biases, including unconscious biases, to influence you.  You should also not be influenced by any person's race, color, religion, national ancestry, or gender, sexual orientation, profession, occupation, celebrity, economic circumstances, or position in life or in the community.

Do not be afraid to examine any assumptions you or other jurors have made which are not based on the evidence presented at trial.  Please do not take anything I may say or do during the trial as indicating what I think of the evidence or what your verdict should be – that is entirely up to you.

It is your duty as jurors to consult with one another and to deliberate with one another with a view towards reaching an agreement if you can do so.  During your deliberations, you should not hesitate to reexamine your own views and change your opinion if you become persuaded that it is wrong.

45) <u>INSTRUCTION NO. 45 CONSIDERATION OF EVIDENCE – CONDUCT OF JURY</u>

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it, although I have no information that there will be news reports about this case; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses, or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any

United States District Court
Northern District of California

research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

46) <u>INSTRUCTION NO. 46 WEALTH OF PARTIES</u>

In reaching a verdict, you may not consider the wealth or poverty of any party as the parties' wealth or poverty is not relevant to any of the issues that you must decide, except as I have otherwise instructed.

United States District Court
Northern District of California

47) <u>INSTRUCTION NO. 47 EVIDENCE IN ELECTRONIC FORMAT</u>

Those exhibits received in evidence that are capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room. A computer, projector, printer and accessory equipment will be available to you in the jury room.

A court technician will show you how to operate the computer and other equipment; how to locate and view the exhibits on the computer; and how to print the exhibits. You will also be provided with a paper list of all exhibits received in evidence. You may request a paper copy of any exhibit received in evidence by sending a note through the clerk.) If you need additional equipment or supplies or if you have questions about how to operate the computer or other equipment, you may send a note to the clerk, signed by your foreperson or by one or more members of the jury. Do not refer to or discuss any exhibit you were attempting to view.

If a technical problem or question requires hands-on maintenance or instruction, a court technician may enter the jury room with the clerk present for the sole purpose of assuring that the only matter that is discussed is the technical problem. When the court technician or any nonjuror is in the jury room, the jury shall not deliberate. No juror may say anything to the court technician or any nonjuror other than to describe the technical problem or to seek information about operation of the equipment. Do not discuss any exhibit or any aspect of the case.

The sole purpose of providing the computer in the jury room is to enable jurors to view the exhibits received in evidence in this case. You may not use the computer for any other purpose. At my direction, technicians have taken steps to ensure that the computer does not permit access to the Internet or to any "outside" website, database, directory, game, or other material. Do not attempt to alter the computer to obtain access to such materials. If you discover that the computer provides or allows access to such materials, you must inform the court immediately and refrain from viewing such materials. Do not remove the computer or any electronic data from the jury room, and do not copy any such data.

48) <u>INSTRUCTION NO. 48 COMMUNICATION WITH THE COURT</u>

If it becomes necessary during your deliberations to communicate with me, you may send a note through the clerk or bailiff, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

1     49) <u>INSTRUCTION NO. 49 RETURN OF VERDICT</u>

2         A verdict form has been prepared for you. After you have reached unanimous agreement

3  on a verdict, your foreperson should complete the verdict form according to your deliberations,

4  sign and date it, and advise the Courtroom Deputy that you are ready to return to the courtroom.