Ekwan E. Rhow - State Bar No. 174604
  erhow@birdmarella.com
Oliver Rocos - State Bar No. 319059
  orocos@birdmarella.com
Brandon R. Teachout - State Bar No. 321672
  bteachout@birdmarella.com
BIRD, MARELLA, RHOW, LINCENBERG,
DROOKS, & NESSIM LLP
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Plaintiff and Counter-Defendant
Rahul Mewawalla

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| RAHUL MEWAWALLA, an individual,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>STANLEY C. MIDDLEMAN, et al.,<br><br>　　　　　Defendant. | CASE NO. 3:21-cv-09700-EMC<br><br>**PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND BILL OF COSTS PURSUANT TO FED. R. CIV. P 54(D) AND CAL. LABOR CODE § 218.5**<br><br>**[*Filed Concurrently with Declarations of Oliver Rocos and Patrick Kitchin and (Proposed) Order]*<br><br>Date:　　May 22, 2025<br>Time:　1:30 p.m.<br>Crtrm:　5<br><br>Assigned to Hon. Edward M. Chen<br><br>Trial Date:　　　　　February 5, 2025 |

Case No. 3:21-cv-09700-EMC

PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND BILL OF COSTS
PURSUANT TO FED. R. CIV. P 54(D) AND CAL. LABOR CODE § 218.5

**TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on May 22, 2025, at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Edward M. Chen, in Courtroom 5, 17th Floor of the above-captioned Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff Rahul Mewawalla ("Plaintiff") will and hereby does move for an award of attorneys' fees against Defendant Freedom Mortgage Corporation ("FMC").

Specifically, Plaintiff hereby requests that the Final Judgment include the attorneys' fees and costs requested herein pursuant to Federal Rule of Civil Procedure 54(d) and California Labor Code section 218.5(a), which provides that the Court "shall award reasonable attorney's fees and costs to the prevailing party" in "any action brought for the nonpayment of wages [or] fringe benefits[.]" Plaintiff was the prevailing party in this litigation, and specifically prevailed on his claim for breach of contract against FMC. The requested fees were reasonably incurred in connection with that cause of action and/or resolving factual and legal issues common to that cause of action and other claims for the reasons set forth herein.

This Motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, the concurrently filed Declaration of Oliver Rocos, the pleadings and papers on file, such further evidence and oral argument as may be presented at the time of the hearing, and such other matters of which the Court may take notice.


DATED:  March 11, 2025          Ekwan E. Rhow
                                Oliver Rocos
                                Brandon R. Teachout
                                Bird, Marella, Rhow, Lincenberg,
                                Drooks & Nessim LLP


                        By:     _____*/s/ Oliver Rocos*_____
                                        Oliver Rocos
                                Attorneys for Plaintiff and Counter-Defendant
                                Rahul Mewawalla

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

I.      INTRODUCTION ................................................................................................................ 1

II.     BACKGROUND ................................................................................................................. 2

III.    PLAINTIFF IS ENTITLED TO ALL FEES INCURRED IN PURSUING HIS
        BREACH OF CONTRACT CLAIM .................................................................................. 3

        A.      A Fee Award Is "Mandatory" Because Plaintiff Prevailed On His Breach-
                of-Contract Claim For Unpaid Wages ................................................................. 3

        B.      Plaintiff's Breach Of Contract Claim Was The Central Claim At Issue And
                It Permeated All Aspects Of, And Evidence In, The Action ............................... 5

IV.     FEES INCURRED ON MATTERS RELEVANT TO PLAINTIFF'S BREACH OF
        CONTRACT CLAIM ARE NOT APPORTIONED AMONG OTHER CLAIMS ............. 6

        A.      Plaintiff's Entitlement To Fees Incurred On His Nonpayment Of Wages
                Claim Is Not Diluted By His Other Claims .......................................................... 6

        B.      The Issues In Plaintiff's Non-Breach Of Contract Claims Overlapped With
                Those In His Breach Of Contract Claims ............................................................. 8

                1.      Plaintiff's False Promise and Concealment Claims Claim Were
                        Inextricably Intertwined With His Breach Of Contract Claim ................ 9

                2.      Plaintiff's Dismissed Statutory Claims Also Were Inextricably
                        Intertwined With His Breach Of Contract Claim .................................. 10

V.      THE REQUESTED FEES ARE REASONABLE ............................................................. 12

        A.      The Requested Rates Are Reasonable ................................................................ 12

        B.      The Requested Hours Are Reasonable ............................................................... 15

VI.     PLAINTIFF IS ENTITLED TO COSTS ......................................................................... 17

VII.    CONCLUSION ................................................................................................................. 18

PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND BILL OF COSTS
PURSUANT TO FED. R. CIV. P 54(D) AND CAL. LABOR CODE § 218.5

1

# **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Federal Cases**

4

*In re Bartenwerfer,*
5
 No. 20-60020, 2021 WL 3560671 (9th Cir. Aug. 12, 2021)....................................................8

6

*Battista v. F.D.I.C.,*
 195 F.3d 1113 (9th Cir. 1999)...................................................................................................4

7

*Camacho v. Bridgeport Fin., Inc.,*
8
 523 F.3d 973 (9th Cir. 2008)..................................................................................................12

9

*Carson v. Billings Police Dep't,*
10
 470 F.3d 889 (9th Cir. 2006)......................................................................................12, 14, 15

11

*Clark v. United Emergency Animal Clinic, Inc.,*
12
 123 F. App'x 736 (9th Cir. 2004)..............................................................................................4

13

*CNC Software, LLC v. Glob. Eng'g Ltd. Liab. Co.,*
 No. 22-CV-02488-EMC, 2023 WL 3409463 (N.D. Cal. May 12, 2023) ...............................13

14

*Drumm v. Morningstar, Inc.,*
15
 695 F. Supp. 2d 1014 (N.D. Cal. 2010) ...................................................................................4

16

*Good Job Games Bilism Yazilim v. Pazarlama A.S.,*
 No. 19-CV-07916-EMC, 2023 WL 3260528 (N.D. Cal. May 4, 2023) .................................13

17

*Greenpeace, Inc. v. Stewart,*
18
 No. 17-35945, 2020 WL 2465321 (9th Cir. May 12, 2020) ...................................................15

19

*Kelly v. Wrangler,*
20
 822 F.3d 1085 (9th Cir. 2016).................................................................................................12

21

*Kona Enters., Inc. v. Estate of Bishop,*
 229 F.3d 877 (9th Cir. 2000).....................................................................................................3

22

*Lopez v. Velocity Transp. LLC,*
23
 No. 22-CV-1414-RSH-KSC, 2024 WL 4957565 (S.D. Cal. Dec. 3, 2024)..............................4

24

*Metaxas v. Gateway Bank F.S.B.,*
 No. 20-CV-01184-EMC, 2022 WL 16949939 (N.D. Cal. Nov. 15, 2022)..............................13

25

26

*Miller v. Carrington Mortg. Servs.,*
 No. C-12-2282 EMC, 2013 WL 6055241 (N.D. Cal. Nov. 14, 2013)....................................18

27

*Moonbug Ent. Ltd. v. Babybus (Fujian) Network Tech. Co.,*
28
 No. 21-CV-06536-EMC, 2022 WL 1289048 (N.D. Cal. Apr. 29, 2022) ...............................13

ii          Case No. 3:21-cv-09700-EMC

PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND BILL OF COSTS
PURSUANT TO FED. R. CIV. P 54(D) AND CAL. LABOR CODE § 218.5

*Moreno v. City of Sacramento*,
    534 F.3d 1106 (9th Cir. 2008) ........................................................................ 15, 17

*Perez v. Safety-Kleen Sys., Inc.*,
    448 F. App'x 707 (9th Cir. 2011) ........................................................................ 15

*Stanley v. Univ. of S. Cal.*,
    178 F.3d 1069 (9th Cir. 1999) ........................................................................ 18

*Stonebrae, L.P. v. Toll Bros.*,
    No. C-08-0221-EMC, 2011 WL 1334444 (N.D. Cal. Apr. 7, 2011), *aff'd*, 521
    F. App'x 592 (9th Cir. 2013) ........................................................ 6, 7, 9, 18

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
    896 F.2d 403 (9th Cir. 1990) ........................................................................ 12

*Winterrowd v. Am. Gen. Annuity Ins. Co.*,
    556 F.3d 815 (9th Cir. 2009) ........................................................................ 4

**California Cases**

*Akins v. Enter. Rent-A-Car Co. of San Francisco*,
    79 Cal. App. 4th 1127 (2000) ........................................................................ *passim*

*Cruz v. Fusion Buffet, Inc.*,
    57 Cal. App. 5th 221 (2020) ........................................................................ 6, 7, 8

*Erickson v. R.E.M. Concepts, Inc.*,
    126 Cal. App. 4th 1073 (2005) ........................................................................ 6, 8

*Hadley v. Krepel*,
    167 Cal. App. 3d 677 (1985) ........................................................................ 12

*Ketchum v. Moses*,
    24 Cal. 4th 1122 (2001) ........................................................................ 12

*Liton Gen. Eng'g Contractor, Inc. v. United Pac. Ins.*,
    16 Cal. App. 4th 577 (1993) ........................................................................ 6, 8

*On-Line Power, Inc. v. Mazur*,
    149 Cal. App. 4th 1079 (2007) ........................................................................ 4

*People v. Millard*,
    175 Cal. App. 4th 7 (2009) ........................................................................ 8

*PLCM Group, Inc. v. Drexler*,
    22 Cal. 4th 1084 (2000) ........................................................................ 12

*Ramos v. Garcia*,
    248 Cal. App. 4th 778 (2016) ........................................................................ 1, 5

PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND BILL OF COSTS
PURSUANT TO FED. R. CIV. P 54(D) AND CAL. LABOR CODE § 218.5

*Rhea v. Gen. Atomics*,
    227 Cal. App. 4th 1560 (2014) ........................................................................... 4

*Schachter v. Citigroup, Inc.*,
    47 Cal. 4th 610 (2009) ........................................................................................ 4

**Federal Statutes**

28 U.S.C.
    § 1920 ................................................................................................................. 17

**California Statutes**

Cal. Labor Code
    § 200 .................................................................................................................... 4
    § 218.5 ...................................................................................................... 1, 5,4, 6, 7
    § 218.5(a) ......................................................................................................... 1, 2
    §§ 970, *et seq.* .................................................................................................... 11
    § 972 .................................................................................................................. 11
    § 974 .................................................................................................................. 11

**Other Authorities**

Federal Rule of Civil Procedure 54(d) ......................................................................... 18

Federal Rule of Civil Procedure 54(d)(1) ..................................................................... 17

Case No. 3:21-cv-09700-EMC
PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND BILL OF COSTS
PURSUANT TO FED. R. CIV. P 54(D) AND CAL. LABOR CODE § 218.5

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

At the conclusion of trial, the jury agreed that Plaintiff Rahul Mewawalla ("Plaintiff" or "Mr. Mewawalla") had been wrongfully terminated by Defendant Freedom Mortgage Corporation ("FMC") without "Cause" and awarded him $4,293,813 in unpaid severance wages and benefits. Under California law—which governed the Employment Agreement and governs this Motion— these damages for "the nonpayment of wages [and/or] fringe benefits" makes it mandatory to award Plaintiff his attorneys' fees. Labor Code § 218.5(a); *Ramos v. Garcia*, 248 Cal. App. 4th 778, 786 (2016) ("[T]he term "any action" refers to any cause of action, and attorney fees may be awarded and apportioned on one eligible claim under section 218.5[.]"). Plaintiff should be awarded the attorneys' fees he seeks.

Throughout the duration of this three and a half year case, Plaintiff's attorneys—an experienced solo practitioner and a trial litigation boutique—litigated against more than a dozen attorneys from three different national law firms to great success. The ferocity of the Defendants' resistance through its many attorneys was substantial and resulted in this case expanding significantly to include hundreds of discovery requests, hundreds of thousands of pages of discovery, two dozen depositions, discovery from half a dozen third parties, six experts, dozens of motions, and 21 trial witnesses in five days. This case was substantially more complex than the average employment dispute—and its value ran into the millions of dollars—and Plaintiff's counsel's rates and hours spent were reasonable in the circumstances.

Further, while Plaintiff brought claims in addition to his breach of contract claims, California law is clear that "fees need not be apportioned when incurred for representation of an issue common to both a cause of action for which fees are permitted and one for which they are not." *Akins v. Enter. Rent-A-Car Co. of San Francisco*, 79 Cal. App. 4th 1127, 1133 (2000) ("***All* expenses incurred on the common issues qualify for an award**," emphasis added). The breach of contract claim permeated every aspect of this action from start to finish, and the case would have looked substantially identical had that been the sole claim brought. Accordingly, Mr. Mewawalla is presumptively entitled to all of the fees he incurred even where that work was *also* relevant to

1

Case No. 3:21-cv-09700-EMC
PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND BILL OF COSTS
PURSUANT TO FED. R. CIV. P 54(D) AND CAL. LABOR CODE § 218.5

another claim. Any reductions to account for the existence of those other claims should be minor and confined to work performed on issues and matter unique to those claims.

In total, Plaintiff incurred $3,900,050 in attorneys' fees and $11,865.91 in nontaxable costs[1] in successfully pursuing his breach of contract claim for unpaid severance wages and he respectfully requests the Court include an award of those amounts in the Final Judgment pursuant to Labor Code  218.5(a). Additionally, as the "prevailing party" in this litigation, Plaintiff is entitled to and seeks $249,369.89 in taxable costs.[2]

## II.    BACKGROUND

Plaintiff filed this action on September 3, 2021, and Defendants removed it to this Court on December 16, 2021 based on diversity. *See* ECF No. 1. Plaintiff sought in his Complaint three categories of damages: (1) unpaid wages and benefits he was due under his Employment Agreement with FMC, including the value of equity he would have earned had he not been terminated; (2) the value of the lost opportunity damages arising from Defendants' fraudulent promises and concealment; and (3) statutory penalties. *See generally* ECF No. 1-1 ("Compl."). In particular, Plaintiff's fifth cause of action, for breach of contract against FMC, sought unpaid wages and benefits under Plaintiff's Employment Agreement, including the severance benefits set forth in sections 8 of the Employment Agreement and the value of his lost equity. *Id.* ¶¶ 120–295. Plaintiff's Prayer for Relief expressly sought the "costs of suit incurred herein, including reasonable attorney's fees and costs." *Id.* at p. 92.

Defendants asserted myriad affirmative defenses to all claims, including fraud, unclean hands, and "after-acquired evidence," and brought counterclaims alleging: (1) breach of written contract; (2) breach of fiduciary duty; and (3) declaratory relief. ECF No. 20 (Answer and Counterclaims) at p. 35-41 and Counterclaims ¶¶ 32–51. In each of those counterclaims, Defendants sought a ruling that Plaintiff had breached his obligations and that he *was* properly terminated for

---

[1]    Specifically, Plaintiff requests $619,182 for attorneys' fees for Kitchin Legal, APC and at least $3,280,868 in attorneys' fees and $11,865.91 in nontaxable costs for Bird Marella LLP.

[2]    Specifically, Plaintiff requests $19,257.16 in in taxable costs for Kitchin Legal, APC, and $230,112.73 in taxable costs for Bird Marella LLP.

"Cause," *i.e.*, the inverse of Plaintiff's breach-of-contract claim, and sought an order compelling Plaintiff to repay a portion of his signing bonus, *i.e.*, repayment of wages.

On May 2, 2022, the Court dismissed seven of Plaintiff's original 19 causes of action in their entirety (namely, counts 3, 4, 10, 11, 12, 17, and 19), leaving 12 remaining causes of action. *See* ECF No. 19 (ruling on Defendants' Motion to Dismiss).

On July 15, 2022, the Court dismissed Defendants' cross-claim for breach of fiduciary duty, leaving 2 remaining cross-claims. *See* ECF No. 37 (ruling on Plaintiff's Motion to Dismiss).

On September 20, 2023, the Court dismissed Defendants' cross-claim for declaratory relief and eight of Plaintiff's causes of action in their entirety (namely, counts 7, 8, 9, 13, 14, 15, 16, and 18), leaving four remaining causes of action for Plaintiff, one remaining cross-claim, and a series of affirmative defenses. *See* ECF No. 160 (ruling on Cross-Motions for Summary Judgment). In connection with that ruling, the Court also held that Plaintiff was not entitled to the value of his lost equity and for expenses incurred in connection with his move from California to Washington. *Id.*

On February 5, 2025, Defendants dismissed their remaining cross-claim and the matter proceeded to trial on Plaintiff's four remaining causes of action—namely, False Promise and Fraudulent Concealment against FMC and Stanley Middleman (counts one and two, respectively), Breach of Contract against FMC and Xpanse (count five), and Breach of the Implied Covenant of Good Faith and Fair Dealing against Xpanse (count six). *See* ECF Nos. 302–307 (Minutes).

On February 12, 2025, the jury returned a verdict in favor of Plaintiff on his claims for False Promise and Fraudulent Concealment and for Breach of Contract against FMC, and in favor of Xpanse on Plaintiff's claims for Breach of Contract and the Implied Covenant of Good Faith and Fair Dealing. *See* ECF No. 310 (Jury Verdict).

### III.   PLAINTIFF IS ENTITLED TO ALL FEES INCURRED IN PURSUING HIS BREACH OF CONTRACT CLAIM

#### A.   A Fee Award Is "Mandatory" Because Plaintiff Prevailed On His Breach-of-Contract Claim For Unpaid Wages

"A federal court sitting in diversity applies the law of the forum state regarding an award of attorneys' fees." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000). "Because

3

Case No. 3:21-cv-09700-EMC
PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND BILL OF COSTS
PURSUANT TO FED. R. CIV. P 54(D) AND CAL. LABOR CODE § 218.5

California law governs Plaintiff's claims, it also governs the award of fees." *Lopez v. Velocity Transp. LLC*, No. 22-CV-1414-RSH-KSC, 2024 WL 4957565, at *11 (S.D. Cal. Dec. 3, 2024).

Under California law, "[i]n ***any*** action brought for the nonpayment of wages [and/or] fringe benefits" the Court "***shall*** award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action." Cal. Labor Code § 218.5 (emphasis added). In other words, "[t]he awarding of attorney's fees is '***mandatory***' in unpaid wage claims." *Drumm v. Morningstar, Inc.*, 695 F. Supp. 2d 1014, 1018 (N.D. Cal. 2010) (emphasis added) (quoting *Earley v. Superior Court*, 79 Cal.App.4th 1420, 1427 (2000)).

It is well-settled that "wages" include not just hourly wages, but all remuneration for employment, including severance payments and awards of restricted stock units issued in lieu of annual compensation. Labor Code § 200 ("'Wages' includes all amounts for labor performed by employees of every description[.]"); *Battista v. F.D.I.C.*, 195 F.3d 1113, 1120 n.8 (9th Cir. 1999) ("California law treats severance pay as wages."); *Rhea v. Gen. Atomics*, 227 Cal. App. 4th 1560, 1570 (2014) ("Our Supreme Court has stated that vacation pay is a type of wages[.]"); *Schachter v. Citigroup, Inc.*, 47 Cal. 4th 610, 619 (2009) ("The Court of Appeal concluded, and we agree, that the shares of restricted stock issued to Schachter also constituted a wage.").

It is equally well-settled that "action[s] brought for the nonpayment of wages" include breach-of-contract claims, such as the one at issue here—not just claims arising under the Labor Code.[3] *See Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 818, 820 (9th Cir. 2009) (noting with approval trial court's award of fees pursuant to Labor Code § 218.5 in action for breach of contract for nonpayment of severance benefits); *Clark v. United Emergency Animal Clinic, Inc.*, 123 F. App'x 736, 738 (9th Cir. 2004) ("Attorney's fees should not be denied on claims for unpaid wages simply because they were not paid in breach of contract."); *On-Line Power, Inc. v. Mazur*, 149 Cal. App. 4th 1079, 1086 (2007) (holding it would be error to conclude that § 218.5 did *not* apply to breach-of-contract claim).

---

[3]   Defendants have not disputed that Plaintiff is entitled to certain attorney fees—only their amount. *See, e.g.*, ECF No. 311 (Tr. I) at 5:12–24 (discussing entitlement to attorney's fees).

1    Finally, "[w]here there are multiple claims alleged in the complaint, a party need not prevail

2  on all of the claims in order to qualify as a 'prevailing party' under section 218.5[.]" *Ramos*, 248

3  Cal. App. at 786 (citing *Aleman v. AirTouch Cellular*, 209 Cal. App. 4th 556, 563 (2012)).

4    **B.    Plaintiff's Breach Of Contract Claim Was The Central Claim At Issue And It**

5    **Permeated All Aspects Of, And Evidence In, The Action**

6    Plaintiff's breach of contract claim was the central and defining claim in this action. Among

7  others, the factual and legal issues that directly concerned that claim included all of the issues that

8  were in dispute from the pleadings through to closing arguments: (1) the Parties' pre-contractual

9  discussions and representations as to the nature of their relationship; (2) the Parties' communications

10  reducing the pre-contractual negotiations to writing; (3) the interpretation of the Employment

11  Agreement; (4) the Parties' performance of their respective obligations, including complaints by

12  and (allegedly) against Plaintiff and others; (5) Plaintiff's challenging of certain proposed and actual

13  decisions made by Defendants; (6) the circumstances, nature, and reasons for Plaintiff's termination,

14  including whether it was or was not "for Cause"; (7) the damages Plaintiff suffered as a consequence

15  of his wrongful termination; and (8) whether Plaintiff acted fraudulently in connection with the

16  formation of the contract or had unclean hands, and whether Defendants could justify their

17  termination with after-acquired evidence. *See generally* ECF No. 315 (Tr. V) at 1087:13–1171:22

18  (closing arguments). While these issues were certainly relevant to other causes of action too, each

19  would have been litigated in a substantially identical manner to that which they were litigated here

20  whether or not those other causes of action had been pursued.

21    Further, all of the testimonial and documentary evidence that was adduced and produced in

22  this case related to these issues, with only minor potential exceptions. All but one of the *24* fact and

23  expert depositions concerned Plaintiff's breach of contract claim.[4] The testimony of all *21* trial

24  witnesses was directly relevant to Plaintiff's breach of contract claim. And all of the many thousands

25  of documents produced in this case concerned these issues with only three potential, and small,

26

27  ────────────────
    [4]    The sole potential exception is the deposition of Defendants' expert Matthew Finkin, which

28  concerned issues of German law.

1   exceptions.[5] Plaintiff is thus entitled to all of his fees spent litigating each of these issues.

2         Each of Defendants' three Counterclaims also directly related to Plaintiff's non-payment of

3   wages claim. Specifically, Defendants' causes of action for breach of contract and declaratory relief

4   each arose directly out of the terms of the Employment Agreement, ECF No. 20 (Answer and

5   Counterclaims) at Counterclaim ¶¶ 33, 46, and the remaining cross-claim for breach of fiduciary

6   duty arose from Plaintiff's conduct performing his obligations, *id.* ¶¶ 39–44. Indeed, until the

7   morning of the first day of trial, Defendants argued that *Plaintiff* should be held liable to *them* and

8   forced to repay certain wages. Accordingly, just as in *Stonebrae, L.P.*, each of these claims were

9   "inextricably intertwined with the breach of contract claim" and "sought to alter the damages

10   recoverable for that conduct." 2011 WL 1334444, at \*10. Just as Plaintiff is entitled to fees for the

11   success of his breach of contract claim, so too is he entitled to fees for his successful defense of

12   Defendants' counterclaims. *Erickson*, 126 Cal. App. 4th at 1084 (cross-claims); *Liton*, 16 Cal. App.

13   4th at 588 (co-defendants). This is only logical: it would be unjust to provide that a plaintiff can

14   recover for fees he won but not for counterclaims that sought to defeat those exact same claims. *See*

15   *Akins*, 79 Cal. App. 4th at 1133 ("***All*** expenses incurred on the common issues qualify for an award,"

16   emphasis added).

17         In sum, therefore, Plaintiff is entitled to recover the attorney's fees incurred in this action

18   because they relate to issues in his breach of contract that sought damages for non-payment of

19   wages. *Cruz*, 57 Cal. App. 5th at 235–36 (fees awarded pursuant to Labor Code § 218.5 need not be

20   apportioned in such circumstances).

21   **IV.**    **FEES INCURRED ON MATTERS RELEVANT TO PLAINTIFF'S BREACH OF**

22          **CONTRACT CLAIM ARE NOT APPORTIONED AMONG OTHER CLAIMS**

23        **A.**    **Plaintiff's Entitlement To Fees Incurred On His Nonpayment Of Wages Claim**

24             **Is Not Diluted By His Other Claims**

25         It is black-letter law that "joinder of causes of action should not dilute the right to attorney

26

27    ————————————

[5]   These potential categories are documents relating solely to (1) Plaintiff's fraud damages;

28   (2) Plaintiff's moving expenses; and (3) punitive damages.

fees." *Akins*, 79 Cal. App. 4th at 1133. Courts have long viewed this principle expansively to ensure a successful plaintiff is properly compensated.

**First,** "it is clear that ***attorney fees need not be apportioned*** between claims for which statutory fees are available and those for which they are not ***where the claims involve either common factual issues or legal issues***." *Cruz v. Fusion Buffet, Inc.*, 57 Cal. App. 5th 221, 235–36 (2020) (emphases added) (considering allocation in the specific context of Labor Code § 218.5). For example, the California court of appeal affirmed in *Cruz* the trial court's conclusion that allocation of fees was not required between meal and rest break claims (for which no fees were recoverable) and wage claims (for which fees were recoverable pursuant to Labor Code § 218.5) because the claims "all necessarily required an analysis and consideration of the number of hours that Cruz worked" and the plaintiff used common evidence to prove all of her claims. 57 Cal. App. 5th at 235–36. The court of appeal distinguished this scenario from another case where allocation was required between claims against a defendant *roofing* contractor and claims against other defendants for wholly unrelated *soil* issues, due to the "well-defined lines of demarcation" between them. *Id.*

Likewise, this Court awarded attorney's fees incurred in successfully litigating a breach of contract claim even though that same work applied to an *unsuccessful* "declaratory relief claim seeking to invalidate [a] liquidated damages claim." The basis for that ruling was that work for that unsuccessful claim was "inextricably intertwined with the breach of contract claim. Rather than constituting a separate substantive cause of action and focusing on a 'distinct and separate' course of conduct, the declaratory relief claim sought to alter the damages recoverable for that conduct." *Stonebrae, L.P. v. Toll Bros.*, No. C-08-0221-EMC, 2011 WL 1334444, at *10 (N.D. Cal. Apr. 7, 2011), *aff'd*, 521 F. App'x 592 (9th Cir. 2013) ("Claims that arise from the same course of conduct are related.").

**Second,** "*[a]ll* expenses incurred on the common issues qualify for an award." *Akins*, 79 Cal. App. 4th at 1133 (emphasis added). This rule entitles a successful plaintiff to fees incurred in litigating ***unsuccessful theories*** of the successful claim. In *Akins*, for example, the court awarded the plaintiff the fees sought on its successful claim notwithstanding that "the bulk of [the] attorney time was spent on claims for which attorney fees are not properly awarded by statute—[including]

the portion of the statutory claim on which [defendant] prevailed in its motion for nonsuit." *Id.* at 1132–33 (affirming award of unallocated fees in such circumstances). That is because "litigation may involve a series of attacks on an opponent's case. The final ground of resolution may become clear only after a series of unsuccessful attacks. Compensation is ordinarily warranted even for those unsuccessful attacks, to the extent that those attacks led to a successful claim." *Id.*

This rule also applies when the common issues involve multiple defendants where, as here, their liability is "so factually interrelated that it would have been impossible to separate the activities involved in" litigating the claims against each. *Liton Gen. Eng'g Contractor, Inc. v. United Pac. Ins.*, 16 Cal. App. 4th 577, 588 (1993). Finally, the rule applies even where the common issues are spread across claims and counter-claims. *Erickson v. R.E.M. Concepts, Inc.*, 126 Cal. App. 4th 1073, 1084 (2005) (holding that "bifurcation of trial did not effect a separation of [the] complaint from the assigned cross-complaints so as to eliminate the court's discretion to award [the cross-complainant] attorney fees incurred in the trial's first phase").

**Third,** "[t]o the extent [Defendant] argues some portion of [Plaintiff's] reasonable attorney fees were incurred solely" in connection with other claims, "it will be [Defendant's] burden to show the [Plaintiff's] prima facie claimed amount of . . . total reasonable fees should be reduced accordingly." *People v. Millard*, 175 Cal. App. 4th 7, 33 (2009) (citing *People v. Fulton*, 109 Cal. App. 4th 876, 884, 886–87 (2003) in the context of restitution fee award); *In re Bartenwerfer*, No. 20-60020, 2021 WL 3560671, at *1 (9th Cir. Aug. 12, 2021) (same in context of bankruptcy court).

### B.    The Issues In Plaintiff's Non-Breach Of Contract Claims Overlapped With Those In His Breach Of Contract Claims

The essence of all of Plaintiff's causes of action in this dispute is that Defendants failed to comply with their obligations. Accordingly, this is not a case with "well-defined lines of demarcation" between each of Plaintiff's claims. *Cruz*, 57 Cal. App. 5th at 236. On the contrary, all of the work undertaken in the course of drafting pleadings, proceeding through fact and expert discovery, preparing the case for trial (including litigation of pre-trial motions), and putting on the case at trial for all claims concerned issues that related to the breach of contract claim.

Even if the issues are viewed with a malevolent eye, there are at most just a handful of

matters that were unique to the non-breach of contract claims such that they are even arguably not-recoverable. As set forth below and in further detail in the concurrently filed Declarations of Oliver Rocos ("Rocos Decl.") and Patrick Kitchin ("Kitchin Decl."), Plaintiff has carved out those fees from this Motion and so the full fees sought herein should be awarded.

### 1. Plaintiff's False Promise and Concealment Claims Claim Were Inextricably Intertwined With His Breach Of Contract Claim

Plaintiff's fraud claims arose out of the *exact same course of conduct* as his breach of contract claim. Specifically, both claims turned on (1) the representations made to Plaintiff; (2) Defendants' breaches of those representations, which were proven by the evidence of the Parties performance (or otherwise) of their obligations; and (3) how Defendants responded when Mr. Mewawalla asserted that those obligations were not being honored. *E.g.*, ECF No. 315 (Tr. V) at 1096:17–1097:15 (closing argument that "Stan Middleman and Freedom had no intention of honoring the promises that had been made to Rahul," entered into a "plot to terminate him," and ultimately "fired [him] for having a good faith disagreement" about "the LLC conversion, the equity buyback, and the double valuations"). Indeed, the evidence proving the fraud was directly relevant to whether there was a breach of contract. The Parties fiercely disputed whether Defendants had "Cause" to terminate Plaintiff, and the evidence and arguments as to Defendants' disposition towards Plaintiff, including their willingness to make false promises and general indifference to his concerns despite having done so, was an intrinsic part of proving both fraud and absence of "Cause." The Parties' dealings and course of conduct taken as a whole supported *both* the fraud and breach of contract claims. The work on those claims was therefore "inextricably intertwined," and Plaintiff is entitled to attorneys' fees for all of it. *See Stonebrae, L.P.*, 2011 WL 1334444, at *10.

Notwithstanding the foregoing, there are two issues relating to Plaintiff's fraud claims that at least were arguably "distinct and separate"—evidence of fraud damages and punitive damages. As to fraud damages for "lost opportunity," Plaintiff testified that there were other employment opportunities he could have pursued had he not worked for Defendants and supported that testimony with evidence of an opportunity he had been offered by third party Engel & Volkers. *See* ECF No. 299 (Revised Final Jury Instructions) at 34 (Instruction No. 29). Defendants sought to defend against

this contention in part through the expert testimony of Professor Matthew Finkin. *E.g.*, ECF No. 219 (Plaintiff's MIL No. 3). Defendants' misrepresentations that deprived Plaintiff of that opportunity unquestionably formed a part of Plaintiff's breach of contract claim because it demonstrated Defendants' indifference towards him and therefore their likelihood to have terminated him without Cause. Nevertheless, Plaintiff is willing to forego the attorneys' fees incurred in addressing this issues and has excluded time entries referring to them from this Motion.[6]

As to punitive damages, Plaintiff sought and obtained in discovery evidence of Defendants' wealth. Such evidence was, again, directly relevant to Plaintiff's breach of contract claim because it again showed Defendants were insulated from the consequences of their actions and were indifferent to the circumstances of others such that they were likely to have terminated him without "Cause." Nevertheless, Plaintiff is again willing to forego the attorneys' fees incurred in connection with the gathering and presentation of evidence on that issue because those damages were available only with respect to his fraud claim.[7] *See* ECF No. 299 at 46–48 (Instruction No. 41); ECF No. 310 (Verdict Form).

2.    Plaintiff's Dismissed Statutory Claims Also Were Inextricably Intertwined With His Breach Of Contract Claim

With respect to Plaintiff's unsuccessful statutory claims (Causes of Action 7–9 and 13–16), those claims also almost entirely overlapped with the successful breach of contract claim such that Plaintiff should be entitled to recover his fees spent pursuing them.[8]

---

[6]    Fees that Plaintiff foregoes in connection with that issue include those incurred (1) collecting and producing documents relating to the Engel & Volkers opportunity; (2) deposing Professor Finkin; (3) bringing Plaintiff's Motion in Limine No. 3 to exclude Mr. Finkin's testimony; (4) opposing Defendants' Motion in Limine No. 1 to exclude certain evidence relating to the Engel & Volkers opportunity; and (5) a portion of the cost of preparing Mr. Persechini's damages report and examining him at trial. Rocos Decl. ¶¶ 13–16, 19.

[7]    Fees that Plaintiff foregoes in connection with that issue include those incurred in (1) preparing letter briefing to compel the production of punitive damages discovery; and (2) opposing Defendants' motion to bifurcate the trial. Rocos Decl. ¶¶ 13–16, 24.

[8]    "Compensation is ordinarily warranted even for those unsuccessful attacks, to the extent that those attacks led to a successful claim." *Akins*, 79 Cal. App. 4th at 1132–33 ("The final ground of resolution may become clear only after a series of unsuccessful attacks.").

In particular, and with only one exception identified below, each of those claims was predicated on (1) the formation of an employment relationship; and (2) the termination of that relationship in a wrongful manner. In particular, Plaintiff's Seventh, Eighth, and Ninth Causes of Action each asserted that he was wrongfully terminated in retaliation for his having challenged decisions made by Defendants. ECF No. 1 (Compl.) ¶¶ 188-216. That contention and the evidence relating to it overlaps entirely with Plaintiff's breach of contract claim. Similarly, Plaintiff's Thirteenth, Fifteenth, and Sixteenth Causes of Action each asserted that he was not paid wages that he was owed at termination. *Id.* ¶¶ 240–257, 270–295. Again, that contention overlaps entirely with Plaintiff's breach of contract claim. Accordingly, the dismissal of those claims should not result in any reduction to the attorneys' fees Plaintiff seeks.

The only meaningful distinction between these statutory claims and Plaintiff's successful breach of contract claim is the legal consequences of the violation, *i.e.*, what statutory damages Plaintiff would have been entitled to had he proven his claims. Because these claims were dismissed on jurisdictional grounds, these issues were not litigated. However, Plaintiff's attorneys did complete some small amount of work with Plaintiff's damages expert to calculate those damages before these claims were dismissed. To the extent time entries indicated that work was performed *exclusively* in connection with a damages theory unique to an unsuccessful statutory claim—such as Plaintiff's efforts to recover double the value of all damages pursuant to Labor Code §§ 972, 974—those fees are not being sought and have been removed.

The only statutory claim that did not overlap entirely with Plaintiff's breach-of-contract claim is his Fourteenth Cause of Action for Violation of Labor Code §§ 970, *et seq.*, because it concerned whether Defendants had wrongfully induced Plaintiff to move out of California. Compl. ¶¶ 258–269. Evidence unique to that claim comprised, however, only a handful of receipts and invoices (Trial Exhibits 254–257, 355–356), and the parties litigated this issue only briefly in connection with Defendants' Motion for Summary Judgment and the pretrial conference. As with other deductions, Plaintiff does not concede that such evidence and work was irrelevant to his breach of contract claim but is willing to forego it.

Finally, following the dismissal of Plaintiff's statutory claims on the basis he should have

11

Case No. 3:21-cv-09700-EMC

PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND BILL OF COSTS
PURSUANT TO FED. R. CIV. P 54(D) AND CAL. LABOR CODE § 218.5

1   asserted claims under Washington law, Plaintiff moved to amend his pleading to include

2   Washington law claims. That motion was subsequently denied, and the Parties entered into a tolling

3   agreement regarding those claims that remains active. Plaintiff does not seek any of the fees incurred

4   in connection with that motion to amend or the tolling agreement. Rocos Decl. ¶¶ 14–15.

5   **V.    THE REQUESTED FEES ARE REASONABLE**

6          Attorneys' fees must be calculated using the "lodestar" method, taking into account "the

7   number of hours reasonably expended multiplied by the reasonable hourly rate." *Ketchum v. Moses*,

8   24 Cal. 4th 1122, 1134 (2001). The reasonableness of attorneys' fees is within the discretion of the

9   trial court, to be determined from a consideration of such factors as the nature of the litigation, the

10  complexity of the issues, the skill required to litigate them, the experience and expertise of counsel

11  in the particular type of work demanded, the amount of time involved, and the success of the

12  attorney's efforts. *Hadley v. Krepel*, 167 Cal. App. 3d 677, 682 (1985). The amount of attorneys'

13  fees and costs requested in an action are presumed to have been "reasonably and necessarily

14  incurred" and "conclusory and unsubstantiated objections" are inadequate to rebut this presumption.

15  *Id.* at 682–83; *see also Carson v. Billings Police Dep't*, 470 F.3d 889, 892 (9th Cir. 2006) ("That a

16  lawyer charges a particular hourly rate, and gets it, is evidence bearing on what the market rate is,

17  because the lawyer and his clients are part of the market."). Additionally, "the district court may

18  enhance the lodestar figure when plaintiff's counsel's 'superior performance and commitment of

19  resources' is 'rare' and 'exceptional' as compared to the run-of-the-mill representation in such

20  cases." *Kelly v. Wrangler*, 822 F.3d 1085, 1103 (9th Cir. 2016).

21         **A.    The Requested Rates Are Reasonable**

22         "The reasonable hourly rate is that prevailing in the community for similar work." *PLCM*

23  *Group, Inc. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000). "[T]he relevant community is the forum in

24  which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).

25  "Affidavits . . . regarding prevailing fees in the community, and rate determinations in other cases

26  . . . are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps*

27  *Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

28         Fee awards granted by this Court over the past several years and expert affidavits submitted

in connection with such awards prove that rates of at least $1,260 for partners and $800 for associates are within the reasonable range of this market. *E.g.*, *Moonbug Ent. Ltd. v. Babybus (Fujian) Network Tech. Co.*, No. 21-CV-06536-EMC, 2022 WL 1289048, at *2 (N.D. Cal. Apr. 29, 2022) (citing case "awarding fees at hourly rates as high as $1,260 for work performed by attorneys at Quinn Emanuel Urquhart & Sullivan, LLP"); *Good Job Games Bilism Yazilim v. Pazarlama A.S.*, No. 19-CV-07916-EMC, 2023 WL 3260528, at *9 (N.D. Cal. May 4, 2023) (citing case "approving Orrick's hourly rates of up to $1,200 for a partner and $800 for an associate); *CNC Software, LLC v. Glob. Eng'g Ltd. Liab. Co.*, No. 22-CV-02488-EMC, 2023 WL 3409463, at *9 (N.D. Cal. May 12, 2023) (citing case approving rates of $530 for a second-year associate, $725 for a senior associate, $780 for a counsel, and $1,165 for a partner as "within the reasonable range of the local market"); Rocos Decl. ¶ 30, Ex. A (third-party expert affidavit submitted in other litigation before the Court attaching compilations of market data as of May 31, 2023 showing awards of rates well into four figures); Kitchin Decl. ¶ 24 (Laffey Matrix identifies an hourly rate of $1,141 for attorneys with 20+ years of litigation experience and $381 for first-year associates).[9]

Given that Defendants are highly sophisticated entities and individuals with access to the counsel of their choice, the clearest evidence of the going rate in the community for legal services in connection with a matter like this one is the amounts charged by Defendants' attorneys, Williams & Connolly LLP and Duane Morris LLP. Court filings by both firms demonstrate that their rates are comparable or higher than Plaintiff's counsel. For example, a January 2025 filing by Defendants' California counsel, Duane Morris, in a San Francisco Superior Court action stated that the partners assigned to that matter billed at rates ranging from $990 to $1,045 per hour and its associates billed at amounts ranging from $484.50 to $715 per hour. *See* Rocos Decl. ¶ 31, Ex. B. Likewise, a court filing from *more than a decade ago* by Defendants' lead counsel, Williams & Connolly, demonstrates that at least one of its partners was charging $850 per hour *in 2013. See* Rocos Decl.

---

[9]    Although this matter should be judged by the standards of complex litigation more generally, the Court has found comparable rates reasonable in the specific context of employment law. *Metaxas v. Gateway Bank F.S.B.*, No. 20-CV-01184-EMC, 2022 WL 16949939, at *4 (N.D. Cal. Nov. 15, 2022) (finding $800 to be a reasonable attorney rate).

¶ 32, Ex. C (attesting to a rate of $765 after a 10% discount). Assuming a modest 5 percent annual rate increase from $850 since 2013, that W&C partner's 2025 rate would be **$1,525 per hour**.

Kitchin Legal was a one-attorney firm during its representation of Plaintiff, with the exception of a four-month period during which Patrick Kitchin was assisted by a part-time associate. Kitchin Decl. ¶ 19. Kitchin, a University of Michigan Law School alum with over three decades of legal experience in wage-and-hour law in California, charged an hourly rate of $850. *Id.* ¶¶ 3–4, 21. Mr. Kitchin's part-time associate charged an hourly rate of $350. *Id.* ¶ 23.

Bird Marella assumed representation of Plaintiff towards the end of fact discovery. Senior partner Ekwan Rhow provided strategic oversight and served as lead trial counsel while partner Oliver Rocos and of counsel Kate Shin managed the case and handled the bulk of the drafting and day-to-day work together with the firm's associates. *See* Rocos Decl. ¶ 2. The attorneys working on this matter are highly educated and experienced in commercial litigation. *Id.* ¶¶ 4–10. Rhow, a graduate of Harvard Law School who has been a licensed attorney for over 30 years, billed at an hourly rate of $1190–$1500. *Id.* ¶ 4. Rocos, who earned an LLB from Cardiff University and an LLM from Boston University who has been a licensed attorney in England and Wales since 2008 and in the United States since 2013, billed at an hourly rate of $875–$905. *Id.* ¶ 5. Shin, who earned her JD from Pepperdine and began to practice in California in 2011, billed at an hourly rate of $790 on this matter. *Id.* ¶ 6. The associates working on the case, who went to law school at UCLA, Georgetown, and Stanford and have each practiced law for at least six years at the time of their work on this matter, billed at an hourly rate ranging from $720–$820. *Id.* ¶¶ 7–10. The paralegals working on this matter billed at an hourly rate of $415 and professional litigation support staff billed at hourly rates from $150–$460.[10] *Id.* ¶ 11.

While the rates these attorneys billed align with those charged in the market, *see supra*, perhaps the most compelling reason for awarding the rates sought is that Plaintiff's counsel were

---

[10]   Only Defendants and their counsel are in a position to submit an affidavit demonstrating these rates. If Defendants challenge Plaintiff's rates as unreasonably high for this matter, Plaintiff would expect to see an affidavit in support of their Opposition setting forth what rates they charged. *See Carson*, 470 F.3d at 892 ("That a lawyer charges a particular hourly rate, and gets it, is evidence bearing on what the market rate is, because the lawyer and his clients are part of the market.").

extremely successful against a far greater number of very experienced and more expensive attorneys representing Defendants. During pre-trial and trial, for example, Bird Marella's *three* attorneys (Ekwan Rhow, Oliver Rocos, and Brandon Teachout) successfully litigated against at least *nine* attorneys from Williams & Connolly and Duane Morris. Rocos Decl. ¶ 25.[11] Had Bird Marella charged lower rates but tripled the number of attorneys on this matter, the total fees sought would unquestionably have been far higher. In the circumstances, Plaintiff's counsel were more than worth their hourly rates. *See* Kitchen Decl. ¶¶ 21–24; Rocos Decl. ¶¶ 29–32.

## B. The Requested Hours Are Reasonable

"By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won[.]" *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008); *Greenpeace, Inc. v. Stewart*, No. 17-35945, 2020 WL 2465321, at *9 (9th Cir. May 12, 2020) (similar). The goal is "to do rough justice, not to achieve auditing perfection." *Perez v. Safety-Kleen Sys., Inc.*, 448 F. App'x 707, 709 n.1 (9th Cir. 2011) ("[T]rial courts need not, and indeed should not, become green-eye-shade accountants."). Given the complexity and scale of the case, the hours spent on this matter were entirely reasonable.

This action was a mammoth undertaking that necessarily incurred substantial effort and expense, primarily because the multi-billion dollar defendant company and its billionaire founder sought to use their substantial resources to bully Plaintiff into submission with the support of an army of attorneys. During the three and a half years it took for this litigation to proceed to trial, Defendants engaged *three different national law firms to represent them*—first Blank Rome LLP, then Williams & Connolly, and then Duane Morris. Defendants had **twelve** attorneys of record and brought at least as many to trial, backed by a phalanx of additional individuals and support staff in the gallery to provide further assistance. Rocos Decl. ¶¶ 25, 29 & n.1.

With respect to discovery, those attorneys sought to and did make written discovery as burdensome as possible, both by serving **192 Requests for the Production of Documents** and dozens

---

[11]   Defendants' attorneys at trial included at least Paul Gaffney, Ricardo Leyva, Ikenna Ugboaja, George Borden, and Alexander Song (all of Williams & Connolly) and Robert Nolan, Stephen Sutro, David Goldstein, and Gregory Herrold. *Id.*

15

Case No. 3:21-cv-09700-EMC
PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND BILL OF COSTS
PURSUANT TO FED. R. CIV. P 54(D) AND CAL. LABOR CODE § 218.5

of Interrogatories and Requests for Admission and then by producing many hundreds of thousands of pages of discovery and subpoenaing multiple third parties. Those attorneys also represented Defendants through eighteen days of depositions of fact witnesses, most of whom either appeared at trial or had designations read into the record at trial, and six days of expert witness depositions—each of whom also provided an expert report and several of which provided amended reports as well. That work was extremely substantial and necessarily incurred a great deal of fees. Kitchen Decl. ¶¶ 16–17; Rocos Decl. ¶ 18.

With respect to motion practice, Plaintiff had to spend time opposing Defendants' meritless cross-claims for breach of fiduciary duty (on motion to dismiss) and for declaratory relief (on summary judgment), both of which (as set forth above) overlapped both factually and legally with Plaintiff's breach-of-contract claim. Plaintiff also had to pursue its own (successful) discovery motions, oppose Defendants' unsuccessful motion to stay the case and then to challenge Magistrate Judge Kim's Report and Recommendation, and spent very substantial amounts of time on administrative motions to seal due largely to Defendants' extensive confidentiality designations that they did not want to drop. Kitchin Decl. ¶¶ 14, 19; Rocos Decl. ¶¶ 20–22.

In pre-trial proceedings, the parties completed vast amounts of work on exhibits, jury instructions, verdict forms, a dozen motions *in limine* and additional disputes regarding exhibits, prepared designations for ten deponents spanning thousands of pages (most of which was apparently wastefully, given that Defendants then brought the majority of those witnesses to trial after hiding the ball about their strategic choices *for weeks*), met and conferred regarding thousands of Defendants' objections, prepared the Joint Pretrial Conference Statement, drafted trial briefs, and then litigated those issues in the January 7, 2025 hearing before preparing numerous supplemental submissions thereafter. Rocos Decl. ¶ 24.

During the five-day, 20-hour, trial, the parties examined 21 witnesses, the Court admitted nearly 100 exhibits, and the parties met and conferred about numerous additional objections. Rocos Decl. ¶ 25; ECF Nos. 301–307.

The work in this action was as substantial as it was largely because Defendants chose it to be so. In total, to address Defendants' tactics of attempting to bury Plaintiff and his counsel and then

to win the case at trial, Plaintiff's counsel invested over 5,000 hours. Plaintiff seeks recovery of fees for 4,695.9 of those hours, which is a reduction of 7.1 percent from the total number of 5,058.1 hours actually incurred (for the reasons set forth above and to eliminate any time entries relating to the transition of counsel from Kitchin Legal to Bird Marella).[12] Kitchen Decl. ¶¶ 10–12; Rocos Decl. ¶¶ 12–16, 19, 24, 27.

Although this figure is significant, all of this work was reasonably necessary for Plaintiff to prevail on his claim for unpaid wages and the amount of time spent on each task was reasonable, as set forth in greater detail in the Rocos Declaration. Indeed, Plaintiff is confident that this figure is low when compared to that spent by Defendants' attorneys.[13] Both Kitchin Legal and Bird Marella had every incentive to work efficiently, avoid duplication of effort, and minimize the attorneys' fees and costs incurred by Plaintiff—both firms were working for a single individual pursuant to a contingent compensation agreement with no guarantee of *any* payment. And both Kitchin Legal and Bird Marella *did* work efficiently—for example, Mr. Kitchin spent just 120.2 hours on motion practice, including litigation of both parties' cross-motions to dismiss, Kitchin Decl. ¶ 12, and Bird Marella ***actually tried this case*** in just ***384.9 hours***, Rocos Decl. ¶ 25.

This was a complex case with difficult legal issues against deep-pocketed, well-staffed, and determined opposition that required experienced and high quality trial counsel to win. Plaintiff's success, alone, demonstrates that his counsel's time was well spent. *Moreno*, 534 F.3d at 1112.

## VI.    PLAINTIFF IS ENTITLED TO COSTS

Federal Rule of Civil Procedure 54(d)(1) provides that "costs . . . should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1); *see* 28 U.S.C. § 1920 (providing for taxation of certain

---

[12]   Specifically, and as set out in further detail in attorney affidavits filed in support of this motion, Kitchin Legal worked 752.7 hours and seeks payment for 724.9 hours. Kitchin Decl. ¶¶ 10–19. Bird Marella worked 4,305.4 hours and seeks payment for 3,971 hours. Rocos Decl. ¶¶ 12–16, 19, 24, 27. Should the Court request it, and subject to review for issues related to attorney/client privilege and work product, counsel is able to provide specific time entries upon request.

[13]   As with counsel's hourly rates, to the extent Defendants contend that any of these figures are unreasonable, they can and should support that with an affidavit demonstrating their counsel litigated the same issues more efficiently.

costs). "Rule 54(d) creates a presumption in favor of awarding costs to prevailing parties, and it is incumbent upon the losing party to demonstrate why the costs should not be awarded." *Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1079 (9th Cir. 1999); *Miller v. Carrington Mortg. Servs.*, No. C-12-2282 EMC, 2013 WL 6055241, at *2 (N.D. Cal. Nov. 14, 2013) (quoting Wright & Miller for the proposition that "the prevailing party is the party in whose favor judgment was entered, even if that judgment does not fully vindicate the litigant's position").

In connection with this litigation, Kitchin Legal has incurred 19,257.16 and Bird Marella has incurred at least $230,112.73 in taxable costs, including filing fees, costs of service, deposition and transcript fees, the costs of creating demonstratives for trial, and others. Kitchin Decl. ¶ 20 & Ex. 1; Rocos Decl. ¶ 33 & Ex. D. Those costs are correctly stated, were necessarily incurred, and are allowable by law. *See id.* Accordingly, Plaintiff seeks an order granting those costs as well.

## VII.    CONCLUSION

"Where, as here, a party achieves an excellent result, the court should refuse to reduce the lodestar amount." *Stonebrae, L.P.*, 521 F. App'x 592. For the reasons set forth above, Plaintiff respectfully requests this Court include in its Final Judgment against FMC an award of $619,182 in attorneys' fees and $19,257.16 in taxable costs to Kitchin Legal and at least $3,280,868 in attorneys' fees, $11,865.91 in nontaxable costs, and $230,112.73 in taxable costs for Bird Marella LLP.

DATED:  March 11, 2025              Ekwan E. Rhow
                                    Oliver Rocos
                                    Brandon R. Teachout
                                    Bird, Marella, Rhow, Lincenberg,
                                    Drooks & Nessim LLP


                                    By:    _/s/ Oliver Rocos_
                                           Oliver Rocos
                                           Attorneys for Plaintiff and Counter-Defendant
                                           Rahul Mewawalla